STATE of Maine

v.

Robert LAMBERT a/k/a Joseph Lambert.

Supreme Judicial Court of Maine.

Sept. 10, 1976.

Joseph M. Jabar, Dist. Atty., Robert J. Daviau, Asst. Dist. Atty., Augusta, for plaintiff.

Gaston M. Dumais, John L. Hamilton, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

On May 3, 1974, Robert Lambert (a/k/a Joseph Lambert), Anthony L. Dumont and Leon S. Van Horn were together made the defendants in four separate indictments charging, respectively, that they possessed methamphetamine (22 M.R.S.A. § 2210), narcotics (22 M.R.S.A. § 2362), cannabis (22 M.R.S.A. § 2383) and a hypodermic syringe (22 M.R.S.A. § 2362–A). When the case came on for trial, the Justice then presiding in the Superior Court (Kennebec County) ordered a severance of the case of defendant Van Horn. The other two defendants, Lambert and Dumont, were then tried before a jury. The jury found them guilty, as charged.

Defendant Lambert (hereinafter "defendant") has appealed from the judgments of conviction entered against him. We deny the appeal.

The first contention on appeal is that the presiding Justice erroneously denied defendant's pre-trial motion seeking the suppression, as evidence potentially useable against defendant, of particular contraband items. The ground of the motion was that the contraband had been seized in execution of a search warrant claimed by defendant to have been issued in violation of defendant's federal constitutional rights under the Fourth–Fourteenth Amendments. The ground of deficiency asserted was that the affidavit supporting the request for the search warrant failed to show probable cause for a search.

The affidavit in support of the request for search warrant, dated February 21, 1974, made the following statements bearing upon probable cause:

"On February 21, 1974, a reliable informant, whose credibility has been es-

tablished and will be further established in this affidavit, told your affiant that at the aforenamed premises occupied by Robert Lambert, there is generally a large quantity of illicit drugs, namely, cocaine, marijuana, methamphetamines and other unnamed drugs available for resale. This reliable informant stated that on February 20, 1974, there did exist a large quantity of marijuana, methamphetamines, cocaine and various other drugs which was viewed by this reliable informant. The informant also stated that the aforementioned premises were well known to dealers and users of illicit drugs as a place where buys or transactions took place as well as a place where the said Robert Lambert would allow and even assist any intravenous injection of certain illicit drugs.

"The reasons that your affiant aforenamed believes that this informant is reliable are as follows: Capt. Robert Welsh of the Augusta Police Department told this affiant that the informant has made controlled purchases of cocaine for the Augusta Police Department in the month of February, 1974 and tests at the Maine Public Health Laboratory positively identified the substance as cocaine. On at least four occasions during the summer months of 1973 this informant relayed information to other police authorities in Kennebec and Androscoggin Counties, as well as other members of the Maine State Police Criminal Division and specifically Mr. Normand Bureau of the Maine State Police Criminal Division, naming individuals directly involved in criminal activities, and further providing information of such a nature as to result in the conviction of at least four individuals for felony criminal violations. Capt. Welsh further advised your affiant that he has also received direct information on several occasions from this confidential informant which, while not resulting in direct convictions, has led him onto further information, resulting in arrests for various criminal violations. Your affiant aforenamed does believe the informantion furnished by this reliable informant for the aforementioned reasons."

The affidavit adequately met the first prong of the two-pronged test formulated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)

" . . . for determining probable cause in those many instances in which the affidavit is based wholly or substantially upon an informant's tip . . ." *State v. Hawkins,* Me., 261 A.2d 255, 259 (1970),

viz., that the affidavit state underlying factual circumstances from which a neutral and detached magistrate may determine not only that the informant's information establishes probable cause but also that such information is itself reliable because acquired in a reliable way. *State v. Hawkins,* supra, at p. 259.

Here, the informant stated to the affiant officer that he, the informant had personally observed, on the previous day, illicit drugs at the Lambert residence. Such personal knowledge of the informant shows his information (if the informer himself is reliable, see infra) to be factual information, rather than mere rumor or suspicion. Further, as thus factual, the information given to the affiant by the informant—that illicit drugs were at the Lambert residence as recently as the day prior to the time the search warrant was requested—sufficiently established the probable cause constitutionally requisite for issuance of the search warrant.

We turn, then, to the second of the *Aguilar* requirements:—whether the allegations of the affidavit are adequate to support a finding by the magistrate of the reliability of the informant himself as a source of information.

Generally, reliability of the informant as a conveyor of information is established by the affiant's statements of his own

knowledge of factual circumstances which demonstrate to the affiant that his informant is a reliable source of information. Here, however, the affidavit reveals no such personal knowledge of the affiant. Instead, the affiant is relying entirely on information as to the reliability of the informant given to the affiant by other persons.

Courts will sustain such hearsay showing of an informant's reliability if the affidavit discloses some independent factual basis for the magistrate to deem the hearsay information reliable. See: *State v. Willey,* Me., 363 A.2d 739 (1976). See also: *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

Here, adequate independent basis for crediting the hearsay as to the reliability of the informant is provided by the affidavit's disclosure that this information came from other police officers who, in usual course of their official business, had acquired personal knowledge of the underlying factual circumstances which they told to the affiant. *United States v. Mc-Cormick,* 309 F.2d 367 (7th Cir. 1962); *People v. Ruster,* 16 Cal.3d 690, 129 Cal. Rptr. 153, 548 P.2d 353 (1976). Cf. *United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

Defendant's pre-trial motion to suppress was properly denied.

■ Defendant purports to raise a further evidence suppression issue as precipitated by a second pre-trial motion of defendant.[1] Since this second motion raised issues, concerning probable cause and the seizure of contraband found outside the Lambert residence, which were

factually and legally identical to those decided under the defendant's first motion to suppress, the presiding Justice denied it, without further hearing, on the ground that the matters involved had already been decided.[2] There was no error in such ruling. *State v. Fitzherbert,* Me., 361 A.2d 916 (1976); *State v. Hazelton,* Me., 330 A.2d 919 (1975).

■ As another point of appeal, defendant claims that the severance of the case of defendant Van Horn on the day of the trial prejudiced defendant's trial because, had Van Horn been tried with defendant, he might have taken the stand and given evidence favorable to defendant. The contention fails. The law recognizes no right of an accused person to be tried with another accused; his only legally cognizable interest is in securing the attendance of another accused as a witness at trial. *United States v. Bronson,* 145 F.2d 939 (2nd Cir. 1944); *United States v. Arcuri,* 405 F.2d 691 (2nd Cir. 1968). Despite objection to the severance, defense counsel made no effort to secure Van Horn's attendance at the trial as a witness. Further, the record discloses no *actual* prejudice suffered by defendant because of the severance.

■ Defendant maintains that the Court erred in denying defendant's motion for acquittal predicated on the ground that the State had failed to prove that defendant had "possession" of the contraband.

The evidence warranted the following findings of fact by the jury. The illicit drugs were taken from a locked steel strong box and a black briefcase which were found by police—together with a red suitcase—on the ground outside of defendant's house directly below his bedroom window, and located in positions indicating that they were dropped or scatteringly

---

1. This second motion to suppress appears to have been made because new defense counsel came into the case after the first motion to suppress had been made and decided.

2. The presiding Justice indicated "for the Record" that had the motion been presented to him initially, he would have ruled exactly as did the other Justice.

thrown. As the police entered defendant's house, defendant, and also Dumont and Van Horn, were seen coming out of defendant's bedroom. Inside the house, the police found paraphernalia commonly associated with the use and packaging of illicit drugs. The exterior (storm) window in defendant's bedroom was found up (open) —an unusual circumstance in the month of February,—and while the inner window was found to be closed, it was unlocked. Defendant told a police officer that he was keeping the briefcase for a friend. After police threatened to break open the locked strong box, defendant gave the police the combination to the box, and using it, the police were able to open the box.

Although these facts may be inadequate to show that defendant was in "actual" possession of the strong box and briefcase, they are sufficient to warrant a jury finding that defendant had "constructive" possession of them, insofar as defendant had " . . . knowledge of . . . [their] presence coupled with the ability to maintain control over . . . [them] or reduce . . . [them] to his physical possession, even though he . . . [did] not have actual personal dominion." *State v. Gellers,* Me., 282 A.2d 173, 179 (1971), quoting *Spataro v. State,* Fla.App., 179 So.2d 873, 877 (1965)

From the facts stated above the jury could properly conclude that defendant, immediately prior to leaving his bedroom (from which the police saw him emerging with Dumont and Van Horn), either himself had thrown, or knew that Dumont or Van Horn had thrown, the briefcase and strong box out of the bedroom window and, therefore, defendant knew of the presence of the briefcase and strong box outside the house and had the ability to reduce them to his dominion and control. Moreover, in conjunction with all these facts, the further fact that in defendant's house were paraphernalia commonly employed to assist in the use or packaging of contraband drugs justified the jury in

finding that defendant (1) knew of the presence in his house,—of which defendant was in actual control—of the paraphernalia connected with the use and packaging of contraband drugs; and (2), therefore, also knew the contents of the briefcase and strong box.

Thus, since the jury was warranted in finding that defendant had "constructive" possession of the strong box and briefcase and also simultaneously knew the nature of their contents and also of the existence of the drug-related paraphernalia in his house, the jury was justified in concluding that defendant had constructive possession of all the contraband involved in the charges against him.

█ As a last point of appeal, defendant contends that the presiding Justice committed error by himself objecting to a question asked by defense counsel and, while so objecting, making statements prejudicial to defendant. The incident occurred when an expert witness who had performed various chemical tests on the substances identified as contraband was asked by defense counsel whether the jury should be permitted to see the results of the tests and make a comparison for themselves. The presiding Justice interrupted and commented:

"That is an improper question, . . .. Mr. Haines is not qualified to testify to what the jury should see and what they shouldn't see. Would you like to ask me that question?"

Subsequently, however, the presiding Justice himself asked the witness whether the actual graphic results of the various chemical tests could be made available if requested by defense counsel. Further, in instructing the jury, the presiding Justice stated that his responsibility was to see that the trial was conducted in accordance with the law. Referring to the occasion when he interrupted "to admonish counsel", the presiding Justice cautioned the jury:

"You are not to draw any inferences whatsoever from the action which I may

have taken during the course of this trial."

In the total context of the case, the isolated interruption by the presiding Justice to admonish defense counsel, and the admonition he gave, were not error. The action of the presiding Justice was within the appropriate bounds of a discretion reposing in him as an incident of his responsibility to maintain an orderly course of trial.

The entry is:

*Appeal denied.*

All Justices Concurring.

WEATHERBEE, J., sat at argument and participated in consultation, but died before the opinion was adopted.

POMEROY and DELAHANTY, JJ., did not sit.