**STATE of Maine**

v.

**Sharon Eberhart NASON.**

Supreme Judicial Court of Maine.

Argued March 5, 1985.

Decided Sept. 3, 1985.

R. Christopher Almy, Dist. Atty., Michael Roberts (orally), Asst. Dist. Atty., Bangor, for the state.

1. This number included repeat visitors and those who waited outside for others who en-

Paine, Lynch & Harris, Martha J. Harris (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

The defendant, Sharon Eberhart Nason, appeals from a judgment of the Superior Court, Penobscot County, after a jury conviction of unlawful trafficking in a schedule W drug, a Class B crime. *See* 17–A M.R.S.A. § 1103 (1983). We affirm the judgment.

## I.

In response to reports that a large number of people were coming and going from the defendant's residence in Bangor, the Bangor Police Department began surveillance of the house in June 1983. For two weeks the police watched the house where the defendant lived with her husband and small child, counting in eleven days 171 visitors whose visits lasted less than forty-five minutes.[1] At times the police observed visitors entering the house with money in their hands and visitors leaving carrying paper bags they had not carried into the house. On one occasion, police overheard the defendant's husband tell two visitors in a car: "Tell me what you want and I can get it."

On one particular evening while the defendant was at home, the police observed thirty-five people paying very brief visits to the defendant's house between 6:30 and 9:00 p.m. Most of the same individuals returned for somewhat longer visits after the defendant's husband came home shortly after 9:00 and entered the house carrying a medium sized box.

On July 8, 1983, the police executed a search warrant. As a result of the search the police found 27.6 grams of cocaine and 41.6 grams of marijuana. On a dresser in

tered the defendant's house.

the bedroom the defendant shared with her husband the police found a small amount of marijuana, a set of scales and a kitchen spoon that bore traces of a cocaine residue, and a box containing the 27.6 grams of cocaine. Behind the dresser were boxes of plastic bags and a box of cornstarch with a spoon in it. The police also seized ledgers, telephone bills, and over $1700 in cash found in the defendant's pocketbook.

The defendant was arrested and charged with two counts of unlawful trafficking in scheduled drugs in violation of 17–A M.R. S.A. § 1103. The Superior Court denied the defendant's motion to suppress from evidence the property seized during the search of her house. After trial, the jury returned a guilty verdict on the count charging the defendant with trafficking in cocaine, while acquitting her of trafficking in marijuana. The defendant raises six issues in her appeal to this court.

## II.

At trial, the defendant sought to call her brother-in-law as a witness. The defendant stated that the witness had resided in the home of the defendant and her husband during a large part of the time in question and could testify to arguments and conversations he had overheard between the defendant and her husband and about his knowledge of the defendant's efforts to leave her husband. At the earlier trial of the defendant's husband before the same trial justice, involving virtually the same circumstances presented by the instant case, the witness had invoked the privilege against self-incrimination and refused to answer questions about his own use and possession of drugs.

This defendant anticipated that the witness would again invoke the fifth amendment in response to such questions. In the defendant's voir dire examination of the witness conducted in the jury's absence, the witness confirmed that he would again assert the privilege if he were questioned about his involvement with drugs. The defendant sought to secure the testimony of the witness by requesting the court to instruct both counsel to refrain from inquiring into the witness's use and possession of drugs. Counsel for the State indicated during the voir dire that it considered the potentially taboo areas of inquiry relevant to its case. Without objection from the defendant, the court denied the requested restriction by ruling that the witness could not testify for the defendant. Two other witnesses who were confidantes of the defendant subsequently testified to her arguments with her husband and her attempts to move out of the house.

The defendant now alleges that the Superior Court's exclusion of the witness violated her right to a fair trial under the sixth and fourteenth amendments of the United States Constitution and article I, sections 6 and 6–A of the Constitution of the State of Maine.[2] Notwithstanding the defendant's failure to preserve the issue by objection, we will review the record for "obvious errors or defects affecting substantial rights." See M.R.Crim.P. 52(b); see also State v. Smith, 472 A.2d 948, 950–51 (Me. 1984); State v. Durepo, 472 A.2d 919, 922 (Me.1984). Our examination of the record discloses no error.

Maine has long followed the wide-open rule governing the scope of cross-examination. See Falmouth v. Windham, 63 Me. 44, 45 (1873); M.R.Evid. 611(b) advisers' note. The rule provides: "A witness may

**2.** The sixth amendment of the United States Constitution, applied to the states through the fourteenth amendment, provides in part: "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor...." U.S. Const. amend. VI.

The compulsory process provision in the Maine Constitution differs only in the verb, pro-

viding that "the accused shall have a right...." Me.Const. art. I, § 6.

The Maine Constitution also provides: "No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of his civil rights or be discriminated against in the exercise thereof." Me.Const. art. I, § 6–A.

be cross-examined on any matter relevant to any issue in the case, including credibility. In the interests of justice, the court may limit cross-examination with respect to matters not testified to on direct examination." M.R.Evid. 611(b). By the voir dire examination, the defendant in effect made an offer of proof conditioned on restriction of cross-examination.

■ Limiting the scope of cross-examination is within the broad discretion of the trial justice. *See State v. White*, 456 A.2d 13, 15 (Me.1983); M.R.Evid. 611(b). On appeal, we will uphold the court's exercise of discretion unless it clearly interfered with the defendant's right to a fair trial. *State v. White*, 456 A.2d at 15. The ruling barring the witness from the stand was within the court's discretion and affected no substantial rights of the defendant. Other defense witnesses provided the testimony the defendant sought from her brother-in-law. The error, if any there was in the preclusion of his testimony, was neither so obvious nor so prejudicial as to require a new trial. *See State v. True*, 438 A.2d 460, 468–69 (Me.1981).

### III.

■ The defendant contends the court should have granted her pretrial motion to suppress evidence seized during the search of her home. The defendant argues that the surveillance that yielded the facts in the affidavit was itself an illegal search. The defendant alleges the affidavit underlying the search warrant was insufficient to show probable cause to believe there was criminal activity occurring in her home. We reject the position of the defendant. There is no allegation the Bangor police conducted their surveillance of the defendant's home from a vantage point where they had no right to be. The defendant had no reasonable expectation of privacy in activities that were exposed to the public outside her house. *See Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); *State v.*

*Littlefield*, 408 A.2d 695, 697 (Me.1979); *see also State v. Peakes*, 440 A.2d 350, 352 (Me.1982). We hold the affidavit based on the surveillance of the defendant's house established sufficient probable cause for a warrant to issue. *See id.* at 353.

■ The defendant further attacks the search on the basis of the seizure and retention of non-contraband items having no relation to those enumerated in the warrant.[3] We consider most of the items that the defendant specifies, including money, photographs, cornstarch, razors, telephone bills, ledgers, an address book, drug-related periodical literature and various bags, to be within the property described in the warrant. Only items related to the descriptions in the warrant were offered in evidence during the course of trial. The search was valid in all respects and the motion to suppress was properly denied.

### IV.

■ The defendant claims the court's instructions left the jury uncertain whether intent to sell was a necessary element of the crime charged. She maintains that the jury's acquittal on the marijuana trafficking count while convicting her of trafficking in cocaine illustrates the confusion resulting from the court's instructions. We find no merit in the defendant's claims. The defendant failed to object to the instructions before the jury retired as required by M.R.Crim.P. 30(b). Accordingly, we review the record for obvious error affecting substantial rights. *See* M.R. Crim.P. 52(b); *see also State v. Smith*, 472 A.2d 948, 950–51 (Me.1984); *State v. Durepo*, 472 A.2d 919, 922 (Me.1984). We have carefully reviewed the record and hold that the court properly instructed the jury that intent was an essential element of the crime with which the defendant was charged.

### V.

The defendant challenges the sufficiency of the evidence to support the verdict. She

---

**3.** The court did order the return of five guitars seized from the defendant's house.

argues that her mere presence at the house where her husband sold drugs was not sufficient for conviction. *See State v. Libby*, 435 A.2d 1075, 1077 (Me.1981). Not only did the evidence demonstrate the presence of the defendant at the times numerous visitors came to the home, but also showed that the defendant shared with her husband the bedroom where the contraband drugs and drug-related paraphernalia were found. In addition, a large amount of money was found in her pocketbook.

The jury did not have to accept the defendant's testimony that although she had seen marijuana in the house, she had never seen cocaine and was not aware of the presence of the drugs, scales, cornstarch, and plastic bags found in her bedroom. Nor did the jury have to accept the defendant's explanation that the money found in her pocketbook had been "given" to her. *See State v. Hebert*, 480 A.2d 742, 748 (Me.1984) (jury free as ultimate finder of fact to weigh credibility of witnesses). We will not set aside the defendant's conviction unless, viewing the evidence in the light most favorable to the State, we determine that the trier of fact could not rationally have found the guilt of the defendant beyond a reasonable doubt. *See State v. Brown*, 479 A.2d 1317, 1318 (Me.1984); *State v. Henderson*, 435 A.2d 1106, 1108 (Me.1981).

 The statute on accomplice liability is broad, providing in part:

A person is an accomplice of another person in the commission of a crime if:

With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct....

17-A M.R.S.A. § 57(3)(A) (1983). Despite the lack of direct evidence tending to show the actual sale of cocaine by the defendant, from the circumstantial evidence in this case, a jury could rationally have found the defendant's participation as an accomplice beyond a reasonable doubt. *Cf. State v. Snow*, 464 A.2d 958, 961 (Me.1983) (conviction based on circumstantial evidence not for that reason less conclusive); *State v. Crosby*, 456 A.2d 369, 370 (Me.1983) (circumstantial evidence not inferior to direct evidence).

## VI.

Without any allegation of tampering or substitution, the defendant contends that certain of the State's exhibits were improperly admitted into evidence at trial because the State failed to prove the chain of custody.[4] On cross-examination, the officer in charge of the State's exhibits conceded that other police officers had access to the room where the items were stored, that the items in one of the evidence envelopes were not those listed as contents, and that the envelopes were not sealed as he had left them. The defendant's contention is lacking in merit.

 We have previously held that a minor interruption in the chain of custody of evidence does not affect its admissibility, but only the weight to be given it by the trier of fact. *State v. Johnson*, 434 A.2d 532, 537 (Me.1981); *see State v. Pickering*, 491 A.2d 560 (Me.1985). It suffices for purposes of admissibility if, by the fair preponderance of the evidence, it is more probable than not that the exhibit is the one related to the case. *State v. Thibodeau*, 353 A.2d 595, 603 (Me.1976). Whether the exhibits had been tampered with while in the custody of the police was for the defendant to show and for the jury to determine. *See State v. Desjardins*, 401 A.2d 165, 171 (Me.1979). The trial court properly found the evidence of custody suf-

---

4. The exhibits included notebooks, a ledger book, and various papers and envelopes.

ficient to allow the admission of the challenged exhibits.

## VII.

Finally, the defendant argues that the admission of evidence of her prior theft conviction was error. The defendant maintains that her portrayal as a criminal was unduly prejudicial when weighed against the limited probative value of a conviction for which she was assessed a twenty-five dollar penalty. We disagree. The rule governing the use of prior criminal convictions provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime (1) was punishable by death or imprisonment for one year or more under the law under which he was convicted, or (2) involved dishonesty or false statement, regardless of the punishment. In either case admissibility shall depend upon a determination by the court that the probative value of this evidence outweighs the prejudicial effect to the defendant.

M.R.Evid. 609.

■ We have noted that the purpose of Rule 609 is to avoid unfairly characterizing the defendant as a criminal while permitting the jury to know facts about his background that bear directly on his credibility. *State v. Hanscome*, 459 A.2d 569, 572 (Me. 1983). "[A]cts of deceit, fraud, cheating, or stealing ... are universally regarded as conduct which reflects adversely on ... honesty and integrity." *State v. Toppi*, 275 A.2d 805, 810 n. 5 (Me.1971) (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir.1967)). It is clear from the record in this case that the court applied the proper standard and did not abuse its discretion in admitting evidence of the defendant's prior conviction of theft.

The entry is:

Judgment affirmed.

All concurring.