MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 183
Docket:      Ken-15-619
Argued:      October 25, 2016
Decided:     December 22, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ERIC ANDERSON

JABAR, J.

[¶1]  Eric Anderson appeals from a conviction entered by the trial court (Kennebec County, *Mullen, J.*) of two counts of unlawful trafficking in schedule W drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2015), following a jury trial.  He contends that the court erred in allowing the jury to consider evidence of prior bad acts, and improperly instructed the jury on accomplice liability and constructive possession.  He also contends that the evidence was insufficient to convict him of the two counts as charged.  We affirm.

I.  BACKGROUND

[¶2]  "Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt."  *State v. Haag*, 2012 ME 94, ¶ 2, 48 A.3d 207.

[¶3]   On February 11, 2015, a special agent of the Maine Drug Enforcement Agency (MDEA) and a confidential informant (CI) fitted with an electronic monitoring device went to Anderson's home at 88 Second Avenue[1] in Augusta, with the purpose of targeting Anderson and another individual, Kathy Tupper, in a drug-purchasing sting.  When they arrived at Anderson's home, the special agent and the CI entered the garage, and Anderson let them into a kitchen area through a door inside the garage.  Other unidentified individuals were also present.

[¶4]  After their arrival, Anderson made a phone call to "Mama Love," Tupper's alias.  The CI asked Anderson whether Tupper had "ups" and "downs," common slang for cocaine and heroin, and Anderson responded affirmatively.  While waiting for Tupper to arrive, Anderson discussed "cooking" cocaine in the special agent's presence.

[¶5]  After Tupper arrived at Anderson's home, the special agent and the CI used recorded bills to purchase what the special agent believed to be three folds of heroin and three crack rocks for $60 and $100, respectively. Anderson was "hovering" during the transaction, asking the special agent and the CI "what do you want, what do you want."

---

[1] Throughout the trial, Anderson's address was referred to as "88 Second Street," but the State's exhibits 3A and 3B, records from the Kennebec County Registry of Deeds, list Anderson's street address as 88 Second Avenue.

[¶6]   On February 20, 2015, several MDEA agents returned to Anderson's home as part of a team to execute a search warrant. The agents knocked and announced themselves, rang the doorbell, and after receiving no response, used a battering ram to break open the locked door leading from the garage into the house. Two individuals who had not been present at the home on February 11 were found attempting to flush drugs, which a chemist later identified as heroin and cocaine, down the toilet. On a table close to the door, agents found a plate with white powder and a razor blade, wax paper, cash, two scales with residue later identified as cocaine, and paper folds containing powder later identified as heroin.

[¶7] Anderson was found upstairs, alone and asleep. The MDEA agents did not find any drugs or illicit material on Anderson's person or on the second floor. None of the agents knew how long he had been asleep, or how long he had been at the house prior to execution of the search warrant.

[¶8] Anderson was indicted by a grand jury on four counts of unlawful trafficking in schedule W drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2015): Counts 1 and 2 charged trafficking in heroin and cocaine, respectively, on February 11, 2015; and Counts 3 and 4 charged trafficking in cocaine and

heroin, respectively, on February 20, 2015. He pleaded not guilty to all four counts.

[¶9] A jury trial was held on October 26 and 27, 2015. Because the State failed to provide the defendant with copies of chemical analyses of the alleged drugs purchased by the special agent and the CI on February 11, 2015, the court sanctioned the State by ruling that the chemical analysis of those substances could not be admitted in evidence. The court subsequently granted Anderson's motion for judgment of acquittal as to Counts 1 and 2, concluding that there was not sufficient evidence for the jury to find beyond a reasonable doubt that Anderson had trafficked in drugs on that date. The court denied Anderson's motion for judgment of acquittal as to Counts 3 and 4.

[¶10] The court instructed the jury on both constructive possession and accomplice liability over Anderson's objection. The jury returned a unanimous guilty verdict, and the court imposed concurrent sentences of four years imprisonment with all but one year suspended and two years of probation. Anderson's motion for a new trial was denied. He now timely appeals from the judgment entered on the jury verdict. *See* M.R. App. P. 2(b)(2)(A).

## II. DISCUSSION

[¶11]   Anderson raises three issues on appeal: (1) whether he was deprived of a fair trial by the State's closing argument that referred to his prior bad acts of February 11, (2) whether the trial court erred by failing to properly instruct the jury regarding constructive possession and accomplice liability, and (3) whether the evidence was sufficient to support his conviction.

A.    Evidence of Prior Bad Acts

1.    The State's References to Evidence from February 11, 2015

[¶12]   The State's presentation of evidence relating to the CI's and special agent's alleged drug purchases on February 11, 2015, was proper, because when the State presented that evidence, Counts 1 and 2 had not yet been dismissed by the court.  The question presented is whether the State's references to the evidence from February 11 during closing argument improperly suggested, in violation of Maine Rule of Evidence 404(b), that Anderson had a propensity to commit drug crimes.  Anderson contends that Rule 404(b) prohibited the State from referencing the events of February 11. Because Anderson did not object to the State's argument that referred to those events at trial, we review for obvious error.  *State v. Robinson*, 2016 ME 24, ¶ 25, 134 A.3d 828.  To prevail on his challenge under this standard, Anderson

6

must show that the State's references to the events of February 11 in its closing argument constitute a plain error that "affects substantial rights" and "seriously affects the fairness and integrity or public reputation of judicial proceedings." *State v. Westgate*, 2016 ME 145, ¶ 15, --- A.3d --- (quotation marks omitted). Anderson fails to meet this burden.

[¶13] "Evidence of [prior bad acts] is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." M.R. Evid. 404(b). Evidence of prior bad acts is admissible, however, if offered to prove identity, intent, knowledge, motive, opportunity, plan, preparation, or absence of mistake. *State v. Poulos*, 1998 ME 43, ¶ 4, 707 A.2d 1307; *State v. Roman*, 622 A.2d 96, 98 (Me. 1993).

[¶14] Here, the State limited its use of the evidence from the events of February 11 to permissible uses, specifically, Anderson's motive, knowledge, and intent. In its closing argument, the State summarized the evidence concerning February 11, then stated "that information is highly important to what happened only nine days later in Mr. Anderson's house." The State went on to tell the jury that "[t]he totality of the evidence indicates he knew just what was going on" in his home on February 20, and asked the jury to draw reasonable inferences from the events of both days. During its rebuttal

argument, the State contended that "[w]hat happened on the 11th is highly relevant to what happened on the 20th, and [the jury] should consider that information in regards to Mr. Anderson's motive and intent on the 20th."

[¶15]  At no point did the State argue that because of Anderson's involvement in the sale of alleged drugs on February 11 he was more likely to have engaged in the sale of drugs on the 20th.  Instead, the State emphasized that Anderson's acts on February 11 were probative of whether he knew that individuals were present in his home and trafficking drugs on February 20, and whether he intended to aid them in that endeavor.  *See State v. Olmo*, 2014 ME 138, ¶ 15, 106 A.3d 396 (stating that evidence found on a defendant's person on a date later than the date of offenses charged would have been admissible pursuant to M.R. Evid. 404(b) because the events were "connected by details that [were] probative of a common scheme of trafficking in specific types of controlled substances").  This constitutes a permissible use of evidence of prior bad acts pursuant to Rule 404(b).

2.    Limiting Instructions

[¶16]  In addition to arguing that the trial court erred by admitting the evidence concerning the February 11, 2015, events, Anderson argues that the trial court erred by allowing the State to reference the February 11 events

during its closing argument without issuing a limiting instruction. Because Anderson did not request a limiting instruction, we again review for obvious error. *See Robinson*, 2016 ME 24, ¶ 25, 134 A.3d 828.

[¶17] Where a defendant does not request a limiting instruction after evidence of a defendant's prior bad acts is admitted, we "assume that counsel concluded that a limiting instruction would have overemphasized the importance of the evidence and decided to forego the request for strategic reasons." *State v. Rogers*, 389 A.2d 36, 38 (Me. 1978); *see State v. Shuman*, 622 A.2d 716, 718 (Me. 1993). Here, because the State limited its use of the evidence to argue that Anderson had the motive, knowledge, or intent to aid others in drug trafficking on February 20, the lack of a limiting instruction does not rise to a level affecting Anderson's substantial rights or affecting the fairness and integrity of the trial. Without a request from counsel, the absence of a limiting instruction is not reversible error. *See Shuman*, 622 A.2d at 718.

B. Jury Instructions

[¶18] Anderson next argues that the trial court erroneously instructed the jury regarding accomplice liability and constructive possession. We address each claim in turn, reviewing the "jury instructions as a whole for prejudicial error, and to ensure that they informed the jury correctly and

fairly in all necessary respects of the governing law." *State v. Tucker*, 2015 ME 68, ¶ 11, 117 A.3d 595 (quotation marks omitted). Because Anderson preserved his objection to the inclusion of accomplice liability instructions as well as the exclusion of his recommended constructive possession instructions, we will vacate his judgment of conviction "if the erroneous instruction[s] resulted in prejudice." *Caruso v. Jackson Lab.*, 2014 ME 101, ¶ 12, 98 A.3d 221; *see also* M.R.U. Crim. P. 30(b).

1.     Accomplice Liability

[¶19]  Over Anderson's objection, the court instructed the jury that

> [a] person may be guilty of a crime if they personally do the acts which constitute the crime, or if they are an accomplice of the person or persons who actually commit the crime. A person may be found guilty of a crime as an accomplice if the State proves beyond a reasonable doubt that, with the intent of promoting or facilitating the commission of a crime, that person solicits, or aids, or agrees to aid, or attempts to aid another person who commits a crime in the planning or commission of that crime. Mere presence at the scene of a crime without more does not prove that a person is an accomplice to a crime.

Anderson contends that the court should not have instructed the jury as to accomplice liability at all because the evidence from the February 20, 2015, search warrant execution does not support the conclusion that Anderson performed any act to facilitate or promote drug trafficking.

[¶20]   A person is guilty as an accomplice of a crime committed by another person if he or she "aids or agrees to aid or attempts to aid such other person in planning or committing the crime," and has the "intent of promoting or facilitating the commission of the crime."  17-A M.R.S. § 57(3)(A) (2015). The State must prove something more than the defendant's mere presence, but need not prove an overt act of physical assistance.  *State v. Pheng*, 2002 ME 40, ¶ 9, 791 A.2d 925.  "[O]nce presence is proven, accomplice liability may attach upon the State's proof of any conduct promoting or facilitating, however slightly, the commission of the crime."  *Id.*

[¶21]   For example, we held in *State v. Nason* that a defendant's presence at the scene during the commission of a crime, in conjunction with other factors, was sufficient for a jury to find her guilty as an accomplice to unlawful drug trafficking.  498 A.2d 252, 255-56 (Me. 1985).  In *Nason*, police officers executed a search warrant at the house where the defendant lived with her husband, seizing cocaine and marijuana from various locations in the home, cash from the defendant's purse, and plastic baggies and a set of scales from her shared bedroom.  *Id.* at 253-54.  We reasoned that based on those facts, the jury heard sufficient circumstantial evidence by which it rationally could have found that the defendant was an accomplice to her husband's drug

dealing. *Id.* at 256; *see also State v. Gervais*, 394 A.2d 1183, 1185 (Me. 1978) (holding that a defendant's "presence as a friend" in a car "could be taken as a circumstance suggesting encouragement" for the purposes of accomplice liability); *United States v. Ortiz*, 966 F.2d 707, 712 (1st Cir. 1992) ("[T]he line that separates mere presence from culpable presence is a thin one, often difficult to plot.").

[¶22]  The circumstances here are similar to those in *Nason*.  On the day that the search warrant was executed, drugs packaged as if for sale, additional packaging, and scales with drug residue were found inside Anderson's home, although not on his person.  Additionally, two individuals were apprehended that day attempting to flush heroin and cocaine down Anderson's toilet.  If the jury accepted as true the State's theory of the case, that on February 11, 2015, Anderson called Tupper to come to his house in order to facilitate the sale of drugs to the special agent and the CI, it would be reasonable for the jury to infer that less than two weeks later, on February 20, Anderson knew of the presence of the drugs in his home and had either (1) invited the other individuals there with the purpose and knowledge that they would package or sell drugs in his home, or (2) knew that the individuals were present for the

12

purpose of packaging and selling drugs and allowed them to remain despite their activities.

[¶23]  Because the circumstantial evidence supported the inference that Anderson acted as an accomplice to the trafficking of cocaine and heroin on February 20, 2015, and because the trial court correctly instructed the jury as to the law of accomplice liability in Maine, the court did not err.

2.    Constructive Possession

[¶24]   Anderson also objected to the court's instructions regarding constructive possession, which consisted of the following:

> A person can also have constructive possession of something[. T]o have constructive possession of something means that although a person does not have actual physical control of an item they have a relationship with that item such that one could conclude that they have dominion, authority or control over the item either alone, by themselves or jointly with others.  Before you may decide someone to have control over an item, you must find beyond a reasonable doubt that the person has a relationship to that property that would enable them to exercise a power, that is dominion, authority or control over the property so as to being in a relationship with the item that would allow them to gain physical custody or control over the item.

> You should understand that a person[']s mere presence in a place where the item is located does not by itself establish dominion or control over the item.  You should also understand that a person does not have to be the owner of an item in order to have actual or constructive possession of the item.

Anderson argues that the court committed prejudicial error by omitting from its constructive possession instruction language requiring that, for the jury to find him guilty under a theory of constructive possession, the State must prove beyond a reasonable doubt that Anderson had knowledge of the presence of drugs in his home as well as an intention and ability to gain physical control of the drugs.

[¶25]  We have long held that a defendant charged with unlawful trafficking may be found guilty if the State proves beyond a reasonable doubt that the drugs were within the defendant's constructive possession.  *State v. Ellis*, 502 A.2d 1037, 1040 (Me. 1985) (citing *State v. Lambert*, 363 A.2d 707, 711 (Me. 1976)).  Constructive possession is established by showing that the defendant had "dominion and control" over particular property or goods.  *State v. Ketchum*, 1997 ME 93, ¶ 13, 694 A.2d 916 (quotation marks omitted).  Constructive possession also "may be joint with one or more persons."  *State v. Gellers*, 282 A.2d 173, 179 (Me. 1971).

[¶26]  For example, in *State v. Lambert* we held that a jury could determine that a defendant had constructive possession of the drugs contained in a briefcase and a strong box found on the ground below his bedroom window.  363 A.2d at 710-11.  The jury could have inferred that the

defendant had thrown those items out the window himself, and thus both the briefcase and strongbox were within his dominion and control. *Id.* at 711. By contrast, the defendant had *actual* possession of "paraphernalia connected with the use and packaging of contraband drugs" that were found inside his house. *Id.*

[¶27]  In another case, when a search warrant was executed and police found marijuana in a defendant's house, we held that although the defendant was not home when the warrant was executed, the evidence was sufficient to support a conviction of unlawful trafficking of a scheduled drug based on the defendant's constructive possession of the drugs found there. *Ellis*, 502 A.2d at 1040. We relied on an inference the jury could have made—that the room in which the drugs were found was the defendant's bedroom—to conclude that the jury had sufficient evidence to find that the "drugs involved were subject to the defendant's dominion and control." *Id.*; *see also State v. Deering*, 1998 ME 23, ¶¶ 3, 13-14, 706 A.2d 582 (upholding a defendant's conviction of aggravated furnishing of drugs where marijuana discovered in a hidden compartment in the defendant's car was subject to his dominion and control, but without discussion of his knowledge or intent concerning the marijuana).

[¶28]  Here, in defining "voluntary conduct," another element the jury was instructed to find in order to convict Anderson, the court instructed the jury to consider whether Anderson "knowingly procure[d] or receive[d] the thing possessed."  The court also instructed the jury that "a person acts knowingly if he is aware that it is practically certain [his] conduct will cause a result," and that "the State must prove beyond a reasonable doubt that the defendant was aware that it was practically certain that he was trafficking in cocaine . . . and . . . heroin."  Further, the court instructed the jury regarding intent that "in the context of acting intentionally, the State must prove beyond a reasonable doubt that it was the defendant's conscious object to traffic in cocaine . . . and . . . heroin."

[¶29]  The jury was therefore tasked not merely with finding whether the drugs were under Anderson's dominion and control, but also whether he acted voluntarily, knowingly, and intentionally.  The elements of knowledge and intent that Anderson now claims were absent from the jury instructions regarding constructive possession were implicit within a finding of "dominion and control" because the jury had to find, on the whole, that Anderson acted knowingly and intentionally in order to convict him of Counts 3 and 4.  *See* 17-A M.R.S. § 1103(1-A); *see also* 17-A M.R.S. § 35(1), (2) (2015) (defining

16

"intentionally" and "knowingly"). Although the court's instructions may not have reflected the exact wording that Anderson would prefer, his requested language was in fact included in the instructions. Looking at the jury instructions as a whole for prejudicial error, we conclude that the trial court correctly and fairly instructed the jury.[2]

C.    Sufficiency of the Evidence

[¶30]   Finally, Anderson asserts that the evidence was insufficient for the jury to convict him of either constructive possession or accomplice liability as to Counts 3 and 4. "When a defendant challenges the sufficiency of the evidence supporting a conviction, we determine, viewing the evidence in the light most favorable to the State, whether a trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Dorweiler*, 2016 ME 73, ¶ 6, 143 A.3d 114 (quotation marks omitted). The jury may draw all reasonable inferences from the evidence presented at trial. *State v. McBreairty*, 2016 ME 61, ¶ 14, 137 A.3d 1012.

[¶31]   To convict Anderson of Counts 3 and 4, the jury needed to find beyond a reasonable doubt that Anderson either (1) intentionally or

---

[2] We note, however, that it may be a better practice to incorporate the definition of knowledge and intent within the specific instruction for constructive possession to clarify that a defendant's knowledge and intent concerning the item constructively possessed must be proved beyond a reasonable doubt.

knowingly possessed—whether actually or constructively—what he knew or believed to be heroin and cocaine and was in fact heroin and cocaine, and had the intent to sell the heroin and cocaine; or (2) with the intent of promoting or facilitating the sale of heroin and cocaine, was accomplice to—by aiding or agreeing to aid—others in the sale of heroin and cocaine, or in their possession with the intent to sell heroin and cocaine. 17-A M.R.S. §§ 57(3)(A), 1101(17), 1103(1-A)(A). The jury could therefore find him guilty either because he was an accomplice to the sale or possession with intent to sell heroin and cocaine, or because he himself actually or constructively possessed the drugs with the intent of selling them. *Id.*

[¶32] Viewing the evidence in the light most favorable to the State, including all reasonable inferences, there was sufficient evidence presented at trial from which the jury rationally could have found each element of Counts 3 and 4 beyond a reasonable doubt based on the State's theory of accomplice liability or constructive possession. *See McBreairty*, 2016 ME 61, ¶ 14, 137 A.3d 1012.

[¶33] Specifically, the jury could have found that on February 11, 2015, Anderson opened the door to his house to the special agent and the CI, and called Tupper on the phone, inviting her to his house and confirming for the CI

that she had "ups" and "downs"—common slang for cocaine and heroin. Before Tupper arrived, Anderson discussed "cooking" cocaine in the presence of the special agent. After Tupper arrived, he "hovered" over the special agent's purchase of alleged heroin and the CI's purchase of alleged crack rocks from Tupper.

[¶34] On February 20, 2015, Anderson was found asleep upstairs in his house, while downstairs several individuals were discovered attempting to dispose of heroin and cocaine. Also found in the house on February 20 were two scales with cocaine residue, folds of heroin appearing identical to the alleged heroin folds purchased on February 11, wax paper, and cash.

[¶35] Based on his behavior on February 11, the jury could reasonably have inferred that Anderson either allowed individuals into his home on February 20 intending that they package for sale or sell heroin and cocaine, or that he knew that they were there and that packaging for sale or selling heroin and cocaine was the purpose of their presence. These inferences would permit a jury to rationally find beyond a reasonable doubt that Anderson was an accomplice to unlawful trafficking of, or constructively possessed with the intent to sell, heroin and cocaine on February 20, 2015.

The entry is:

Judgment affirmed.

---

Darrick X. Banda, Esq. (orally), Law Offices of Ronald W. Bourget, Augusta, for appellant Eric Anderson

Janet T. Mills, Attorney General, and Katie Sibley, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Kennebec County Superior Court docket number CR-2015-187
FOR CLERK REFERENCE ONLY