**STATE of Maine**

v.

**Theresa S. MARTELLE.**

Supreme Judicial Court of Maine.

Feb. 24, 1969.

John N. Kelly, Asst. Atty. Gen., Augusta, for the state.

Henry Steinfeld, Portland, for Theresa S. Martelle.

Before WILLIAMSON, C. J., and WEBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

A warrant issued on October 17, 1967 commanding enforcement authorities to search the premises known as 47 West Street, located at 47 West Street, in the City of Portland, County of Cumberland, in this State, which premises were further described in the warrant as being owned/occupied by "Teresa" Martelle and "Osborn" Hill, Jr., on the grounds that gambling paraphernalia and other named articles associated with the operation of illegal bookmaking in violation of 17 M.R.S.A. § 1801 were concealed thereon.

The defendant Martelle moved to suppress all the property seized under the search warrant and, upon hearing, the Justice below granted the motion respecting the property taken and identified in the officer's return under the captions "2 floor Approx 25 Pieces of Paper with number (one letter)", as well as "certain material consisting of sheets of cardboard or a sheet of cardboard * * * picked up near a telephone in the Hill apartment * * * not listed on the receipt," and ordered its suppression. The property listed on the officer's return [Defendant's Exhibit #1] as having been taken from the "first floor" was ruled admissible into evidence. The defendant Martelle has not appealed from the order, but the State of Maine has under 15 M.R.S.A. § 2115–A.

The propriety of the Court's ruling suppressing any of the State's evidence is properly before us for adjudication under Rule 37A(b) of the Maine Rules of Criminal Procedure.

Initially, we must be mindful of the very narrow issue which the parties have raised for our judicial solution. Notwithstanding defendant's stated reason in her motion to suppress that the reference search and seizure were not authorized by a valid search warrant, her attorney at the hearing, when requested to spell out for the record the exact and specific grounds upon which he relied in his assault upon the search warrant, clearly informed the Court that it was the position of the defendant that, even though a valid search warrant was issued, the search made thereunder was done in an improper and illegal manner, not authorized by the said valid search warrant, and that the fruits of that search, therefore, should be suppressed. The following colloquy further illustrates the defendant's concurrence respecting the validity of the search warrant.

"Brother Kelly [State's attorney]. It is not the issuance of the warrant or the illegality of the warrant or the affidavits supporting the warrant or any of those things. He assumes that it was issued properly; I don't have any problem there.

"Mr. Steinfeld: No.

"The Court: But in the method of execution of the warrant in whatever respects the facts will develop, you contend that the illegal execution of the warrant therefore makes the fruits of the execution improperly obtained.

"Mr. Steinfeld: Yes, sir."

The presiding Justice made his decision in the light of the agreement of the parties that the validity of the search warrant was not in dispute. Therefore, we express no opinion thereon, and our decision sustaining the State's appeal should in no way be interpreted as a decision upon and approval of the validity of the within search warrant issued in the instant case respecting a multiple-occupancy structure.

The issues framed for decision are stated as follows:

"1. Whether failure by police officers executing a validly issued search warrant to post a copy of the search warrant and inventory of property seized on the apartment door of the respondent herein, rendered their search unconstitutional?

"2. Whether failure of officers in executing a validly issued search warrant to display the search warrant to the respondent at the time of the search renders the search and seizure unconstitutional?" We answer both questions in the negative.

The evidence supports fully the findings of facts made by the presiding Justice and, with the undisputed testimonial report of the search, discloses the following sequence of events. Osborne R. Hill, stated in the search warrant to be the owner/occupant with the defendant, Theresa S. Martelle, of the premises known as and situated at 47 West Street in Portland, Maine, in fact occupied with his wife, Julia, the ground floor apartment of a three (3) story wooden structure, while the defendant Martelle was, and had been for approximately 3 years, living on the second floor in a front apartment leased from the Hills who owned the building. Another tenant occupied at the time a separate apartment on the second floor. The common entrance at the street level had double doors, the left one being numbered 47, and gave access to a common hallway from which the Hill apartment could be reached. Entrance to the Martelle apartment on the second floor level could be had by climbing a flight of stairs situated in the common hallway.

Detective Durrell of the Maine State Police had the original search warrant and one copy and was in charge of the search party. A total of six officers in plain clothes participated in the raid. When De-

tective Durrell presented himself to Mrs. Hill at the common entrance-way with Sergeant Hanson at about 11:25 A.M., he identified himself, advised her that he had a search warrant and was going to search the premises for gambling paraphernalia. While Detective Durrell searched the Hill apartment, Sergeant Hanson went to the Martelle apartment on the second floor, where Mrs. Martelle was in the process of getting dressed after having been awakened by the noise in the hallway. The door to her apartment was opened by the officers with a key obtained from the landlord Hill. She was then told by Sergeant Hanson that he was a State Police Officer, had a search warrant, and was going to search her premises. At that time, the original search warrant and copy were in the pocket of Detective Durrell who was conducting the search of the Hill apartment on the first floor level. Mrs. Martelle, Mr. and Mrs. Hill and another person found in a third apartment on the second floor, were summarily corralled and confined to the living room of the Hill apartment while the search of the premises was carried on. Removal of all the occupants to a central location was official prearranged strategy for the asserted purpose of a more effective search and relief from close individual surveillance. Such mobilization was believed an effective means to thwart any possible effort at concealment or interference. Within the hour, Mrs. Martelle and the Hills were informed that they were under arrest and were removed from the building, Detective Durrell remitting the original search warrant and copy to Sergeant Hanson for completion of inventory, return and posting of copy. The sergeant made the inventory while in the Hill apartment shortly before 4:00 P.M. in the presence of Detective Haines and Troopers Ames and Gingrow. No copy of the search warrant nor a receipt for the property taken from the apartment of Mrs. Martelle were given to her at any time. Detective Haines however tacked to the inner door leading to the living room of the Hill apartment on the first floor the only copy of the search warrant and inventory which Officer Hanson had completed.

As previously stated, the only issue before us is whether the admittedly valid search warrant was improperly executed, and, if so, whether such improper execution invalidated the search and tainted the fruits thereof to the extent of compelling their exclusion and suppression from the evidence.

We shall first direct our attention to the alleged pre-search defect in execution of the search warrant, in that Sergeant Hanson did not display the same to Mrs. Martelle at the time of the officer's entry into her apartment for the purpose of searching it for gambling paraphernalia.

 Initially, let us say that neither the Fourth Amendment of the Constitution of the United States applicable to State action through the Fourteenth Amendment, nor our own Article I, Section 5 of the Constitution of Maine, specifically direct the manner of execution of the search warrant. They expressly command that the place to be searched and the person or thing to be seized be specially designated before any warrant may issue. They further require the existence of probable cause and that all these prerequisites to the issuance of the warrant be supported by oath or affirmation. The execution of the warrant will withstand attack on constitutional grounds provided it does not amount to a breach of the constitutional mandate that people be secure in their persons, houses, papers and possessions from all *unreasonable* searches and seizures. The constitutional limitation of reasonableness upon the use of search warrants is to be observed by the officers in their execution thereof. See, Buckley v. Beaulieu, 1908, 104 Me. 56, 71 A. 70, 22 L.R.A.,N.S., 819.

 Even though Rule 41(c), M.R. Cr.P., requires the warrant to direct when it is to be *served*, in the daytime or at any time, such expression "to be served" was not intended to import the giving of notice with which we usually associate such term

in the execution of civil process, but was merely used as a synonymous substitute for the expression "to be executed." The purpose of a search warrant is to seize the thing or person alleged to be at the time of issuance in the place to be searched to prevent removal or further concealment. The officer's authority under the warrant is to enter upon the described premises and conduct the directed search to accomplish the purpose for which the warrant issued and the rights and duties of police officers in its enforcement do not depend upon the giving of notice. Our Court has used the terms "serve" and "execute" interchangeably in reference to search warrants in State v. Guthrie, 1897, 90 Me. 448, 38 A. 368.

■ Rule 41(d), M.R.Cr.P., dealing with the execution of the search warrant, is completely silent respecting any necessity, on the part of enforcement authorities about to execute the warrant and make their entry upon the premises, to exhibit the warrant or declare their authority as a prerequisite to the right to search and seize under it. An officer, when executing a criminal process, is bound, on demand, to make known his authority, but his omission to do so can do no more than deprive him of the protection, which the law throws around its ministers, when in the rightful discharge of their official duty. State v. Phinney, 1856, 42 Me. 384, 390–391.

"No formal statement as to the contents of the warrant is necessary to its execution. And unless the statute [or rule of court having the force of statute] so provides, an officer charged with the execution of a lawful warrant is not obliged to exhibit the warrant as a prerequisite to the right to execute it." 47 Am.Jur., Searches and Seizures, § 39; State v. Brown, 1922, 91 W.Va. 709, 114 S.E. 372; Lehrer v. State, 1924, 183 Wis. 339, 197 N.W. 729; Garrett v. State, 1952, 194 Tenn. 124, 250 S.W.2d 43; Condra v. Anderson, 1953, Texas, Ct. of Civil App., 254 S.W.2d 528.

■ In the instant case, the Court found that Sergeant Hanson, upon opening the door of Mrs. Martelle's apartment, advised her that he was a State Police Officer, had a search warrant and was going to search her premises. Under such circumstances, she has no grievance of any kind, let alone of constitutional dimension. She complains however that Sergeant Hanson did not have physical possession of the search warrant at the time of his entry into her apartment. That is true, but the sergeant was conducting the search under the immediate supervision and direction of Detective Durrell who was in charge and had the warrant in his possession on the first floor level of the premises which the warrant described and ordered to be searched. Physical possession of the search warrant by a superior officer, while upon the premises to be searched, clothes his agents with ample authority to execute the warrant.

■ The State agrees that no copy of the warrant nor receipt for the property taken from Mrs. Martelle's apartment was given to her, nor was such a copy and receipt left at her apartment. The posting of a copy of the warrant and inventory list of the seized property on an inside door leading to the living room apartment of the Hills, even though off the common hallway, does not in our view constitute substantial compliance with Rule 41(d), respecting the fulfilment of the conditions subsequent required by the rule to be performed in the search of and seizure from the Martelle apartment. The presiding Justice found, and justifiably so, that the officers knew or should have known from their inspection of the premises and other evidence that Mrs. Martelle was occupying a separate apartment from the Hills whose tenant she was. Nevertheless we hold that non-compliance with the ministerial demands of the rule did not invalidate the search and seizure under the warrant. Giacolone v. United States, 1926, C.C.A., 9th Cir., 13 F.2d 108.

In State v. Brochu, 1967, Me., 237 A.2d 418, 424, we said: "The receipt for property taken and the return of the warrant

with inventory are ministerial acts. Failure to perform acts of this nature do not void a search warrant or the search conducted under its protection."

 The enforcement authorities in the instant case displayed a near-complete disregard of the law in the execution of the search warrant respecting the apartment of Mrs. Martelle. By our present holding, we do not wish to suggest that we sanction police conduct in nullifying our Rule 41(d) of the Maine Rules of Criminal Procedure. Where the person whose apartment is searched is present at the time of entry by the officers and there is no warrant of arrest pending against such person, it is not within the authority of the police to remove such occupant from his dwelling-house on the mere pretense that the search will be rendered ineffective unless made in his absence. Arrest for interference with the administration of justice or for police protection upon probable cause therefor would be different. In the instant case, the officers had no cause to evict Mrs. Martelle from her rent during the search. The rule directs that the inventory of the property taken be made in the presence of the applicant for the warrant [the record does not disclose whether Officer Baston, who applied for the search warrant, was a member of the searching party] *and* the person from whose possession or premises the property was taken, *if they were present*, and in the absence of either or both in the presence of at least one credible person in their stead. The officers were not authorized to remove Mrs. Martelle from whose possession or premises the property was taken, prior to the making of the inventory as required by the rule except for exigent circumstances which were not present here. The posting of the copy of the warrant and of the inventory list is permitted by the rule where the search is made in the absence of the owner of the property seized or the occupant of the premises from which the property is taken.

Official dereliction in the punctilious observance of Rule 41(d) which has the force of law respecting the steps to be taken in the execution of search warrants cannot be overlooked and imposes upon us the instant duty of forewarning all enforcement authorities that we expect full compliance in the future. We are inclined to believe that there exists no such general practice justifying at this time the adoption of an exclusionary rule to compel obedience. We take notice that under the rule the person *from whom or from whose* premises the property was taken may obtain a copy of the inventory from the judge or complaint justice on request.

There was error below; the motion to suppress should not have been granted. The appeal of the State is sustained. Counsel fees and costs for the defense of the appeal to be allowed by the Supreme Judicial Court on request under 15 M.R.S. A. § 2115-A(4).

The entry will be

Remanded to the Superior Court for further proceedings consistent with this opinion.