STATE of Maine

v.

Rick FOGG.

Supreme Judicial Court of Maine.

Jan. 29, 1980.

---

G. Arthur Brennan, Dist. Atty., Joseph A. Wannemacher, Asst. Dist. Atty. (orally), Anita St. Onge, Law Student, Alfred, for plaintiff.

Brown & Fitzpatrick, by James J. Fitzpatrick (orally), Portsmouth, for defendant.

Before McKUSICK, C. J., WERNICK, GODFREY and GLASSMAN, JJ., and DUFRESNE, A. R. J.

McKUSICK, Chief Justice.

Defendant Rick Fogg appeals from a judgment of conviction entered May 15, 1979, in the Superior Court, York County, on the verdict of a jury finding him guilty of burglary in violation of 17–A M.R.S.A. § 401. Defendant's sole claim is that Robert Presby, a confederate in the burglary, should not have been permitted to testify at trial because his testimony was the fruit of the poisonous tree of his unlawful arrest.

We deny the appeal.

At about midnight on January 18, 1979, several York police officers and detectives responded to a burglar alarm sounding at the Family Pharmacy in the town of York. There they found that a hole had been burned through the metal door leading into the back of the pharmacy. A single footprint was left in a small pile of snow on the loading ramp outside the metal door. Upon further investigation around the snow-covered parking lot behind the store, Sergeant Thomas White picked up a trail of three sets of footprints leading away to the rear. Each set of prints had a distinctive pattern: one was like a sneaker; and another, like a large boot; and the third had a "dimpled" design. One set matched the print left on the loading ramp. The officer followed the prints in the snow over a small embankment, at the bottom of which he found a crowbar and an acetelyne torch. The prints continued in a southerly direction over a snow-covered field.

For a distance of almost a mile, Sergeant White, aided by Detective Hill, followed the trail, which led them directly to the Mic Mac Motel. There they were joined by two more police officers. They checked the registration cards and found that all of the rooms were rented to families except one, room # 10, which was registered in the name of defendant Rick Fogg for double occupancy. They found the same distinctive footprints beside the pickup truck parked outside room # 10. The motel keeper identified the truck as the vehicle in which Fogg had arrived. One of the officers remembered that he had earlier observed the truck at the gas station across Route 1 from the Family Pharmacy. A further check with the Salem, Massachusetts, police showed that the address given by defendant Fogg in registering at the motel was false.

As three officers approached room # 10, one of the occupants was seen trying to escape through a back window. At that point the officers drew their guns and knocked on the door. Defendant emerged immediately, followed by Herbert Millette, Robert Presby, and Paul C., a juvenile. Three of the four wore shoes with treads that matched the prints which the officers had followed from the pharmacy. All four occupants of the room were informed that they were under arrest.

On March 5, 1979, the York County grand jury indicted defendant and Herbert Millette with having committed burglary at the Family Pharmacy. Prior to trial, Fogg moved to suppress, for use as evidence at trial, a statement that Robert Presby had given to the York police on the day of the arrests. Fogg's counsel argued that the police did not have probable cause to arrest without a warrant the occupants of room # 10 and that Presby's statement was tainted by his alleged unlawful arrest. After hearing, the presiding justice denied the

motion. At trial, Presby, who had already pleaded guilty to the burglary, was called to testify for the State. Defendant's counsel renewed his prior motion to suppress Presby's statement and, in addition, moved to suppress any other testimony by Presby. The presiding justice reserved decision on the admissibility of the prior statement, but allowed Presby to testify. No prior statement was offered. Presby testified that he, defendant, Millette, and Paul C. had planned and carried out the burglary at the Family Pharmacy. The jury found both defendant and co-defendant Millette guilty of burglary.

On appeal, we reject defendant's argument that the arrest of Presby was unlawful because the officers lacked probable cause to arrest without a warrant. Probable cause to arrest "exist[ed if] facts and circumstances within the knowledge of the officers and of which they [had] reasonably trustworthy information would warrant a prudent and cautious person to believe" that the arrestees had committed the burglary. *State v. Parkinson*, Me., 389 A.2d 1, 8 (1978); *State v. Smith*, Me., 379 A.2d 722, 724–25 (1977). The State has the burden of proving by a fair preponderance of the evidence that probable cause justifying the warrantless arrest existed. But the presiding justice's finding of probable cause will not be set aside unless clearly erroneous. *State v. Parkinson, supra* at 9. The State fully met its burden in this case. As of the moment that the officers drew their guns and knocked on the door to room # 10, they had probable cause to believe that the occupants of the room had committed the burglary. From all the circumstantial information that the officers had by then assembled, any prudent and cautious person would inevitably conclude that the fresh footprints in the snow, leading direct-

ly from the scene of the burglary, identified the hiding place of the pharmacy burglars. Presby's warrantless arrest was completely lawful.

There being no error in the presiding justice's denial of defendant's motions to suppress,[1] the entry must be:

Appeal denied.

Judgment affirmed.

NICHOLS, J., did not sit.

---

1. By disposing of this appeal by our affirmance of the presiding justice's finding of probable cause for Presby's warrantless arrest, we are not to be taken as expressing an opinion that defendant Fogg has standing to raise the issue of the legality of Presby's arrest, *see Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), or that Presby's in-court testimony (his out-of-court statement never having been offered in evidence) was tainted after the span of two and a half months, during which time he had become represented by counsel and had engaged in plea bargaining with the State, *see United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).