**STATE of Maine**

**v.**

**Clayton David ELLIS.**

Supreme Judicial Court of Maine.

Argued Nov. 12, 1985.

Decided Dec. 24, 1985.

R. Christopher Almy, Dist. Atty., Philip Worden (orally), Bangor, for plaintiff.

Anderson, Merrill, Norton & Relyea, Lawrence E. Merrill (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

Clayton David Ellis appeals from a judgment entered on a jury verdict in the Superior Court (Penobscot County) convicting him of Unlawful Trafficking in Scheduled Drugs (Class C), 17–A M.R.S.A. § 1103 (1983) and Unlawful Possession of Schedule W Drugs (Class D), 17–A M.R.S.A. § 1107 (1983). On appeal, the defendant challenges the authority of the complaint justice who issued the warrant for a search of his residence, the complaint justice's probable cause determination, the manner in which the warrant was executed, and the sufficiency of the evidence. Finding no error in the issuance or execution of the search warrant and sufficient evidence to support the jury's verdict of guilty on both counts, we affirm the judgment.

## ISSUANCE OF THE SEARCH WARRANT

■ The first two claims of error focus on the search warrant issued by a complaint justice that authorized the search of the defendant's residence located in Hampden. The defendant asserts that the search warrant was invalid because the complaint justice was not a justice of the peace as required by 4 M.R.S.A. § 161 (1964). We disagree. Section 161 provides

that any licensed attorney "who is also a justice of the peace" may be authorized to issue search warrants. In 1981, the Legislature enacted a statute governing the appointment of notaries public and justices of the peace, phasing out the office of justice of the peace. 5 M.R.S.A. § 82 (Supp.1985–1986). The revision clause of the 1981 statute provides that whenever the words "justice of the peace" appear in the Revised Statutes, they shall be amended to read "notary public," except when those words are used to refer only to actions taken prior to the effective date of the Act. P.L. 1981, ch. 456, § 128 (effective July 1, 1981). The action challenged here, the issuance of the search warrant, was taken on December 11, 1984. Accordingly, the complaint justice, who as an attorney had all of the powers of a notary public,[1] was authorized to issue a valid search warrant for the defendant's residence.

■ The defendant also challenges the probable cause determination made by the complaint justice. Because the defendant at the suppression hearing limited his attack to the execution of the search warrant and did not challenge the sufficiency of the probable cause, we decline to review the issue, raised for the first time, whether probable cause existed for the issuance of the search warrant. Cf. State v. Thornton, 485 A.2d 952, 953 (Me.1984); State v. House, 481 A.2d 1129, 1134 (Me.1984).

## EXECUTION OF THE SEARCH WARRANT

The defendant next argues that his motion to suppress the fruits of the search should have been granted because of the police officers' failure to comply with Rule 41(d) of the Maine Rules of Criminal Procedure.[2] He claims that the supporting affi-

---

1. Attorneys duly admitted and eligible to practice in Maine have all of the powers of notaries public and are authorized to do all acts that may be done by notaries public. 4 M.R.S.A. § 1056 (Supp.1985–1986).

2. M.R.Crim.P. 41(d) provides:

(d) **Execution and Return with Inventory.** The warrant may be executed and returned only within ten days after its date. The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the

davit was not attached to the search warrant when it was served, a receipt was not provided for the property seized, and the copy of the inventory left at his residence was insufficient and not verified.

Here, the record reflects that Joel Ellis, the defendant's son, was the only person present when the search was initiated. The police officers gave him a copy of the search warrant, to which the supporting affidavit apparently was not attached, and left an inventory sheet or receipt upon completion of the search. The inventory was later verified before a notary public, although the verification does not appear on the copy left at the house. The inventory or receipt did not refer to some white tablets allegedly seized.

■ We have consistently held that noncompliance with the ministerial demands of Rule 41(d) does not invalidate the search and seizure conducted pursuant to a warrant. *See, e.g., State v. Appleton*, 297 A.2d 363 (Me.1972) (although defendant present, no inventory filled out in his presence and no receipt given); *State v. Lund*, 266 A.2d 869 (Me.1970), *cert. denied*, 404 U.S. 836, 92 S.Ct. 124, 30 L.Ed.2d 68 (1971) (copy of warrant and inventory not served until morning after search); *State v. Martelle*, 252 A.2d 316 (Me.1969) (officers who searched Martelle's apartment did not leave copy of warrant, affidavit or receipt). Although we noted in *Appleton* and *Martelle* that persistent official disregard of the ministerial duties in Rule 41(d) would justify the adoption of an exclusionary rule, the officers' conduct here does not suggest a widespread disregard for the demands of Rule 41(d), but instead, shows an effort to comply therewith. *See State v. Appleton*, 297 A.2d at 372; *State v. Martelle*, 252 A.2d at 321. An inventory,

which the defendant concedes could serve as a receipt, was left at the premises. Absent a request to the court, the rule requires only that the inventory be verified by an officer, as it was here. That the inventory contained no reference to white tablets among the numerous items seized does not render it insufficient.

■ The defendant's argument that the warrant was invalid without an attached affidavit is also without merit because the presentation of the warrant itself to the occupant is a ministerial function. Therefore, whether the affidavit was attached to the warrant when presented does not affect its validity. *See State v. Gamage*, 340 A.2d 1, 13 (Me.1975). We recognized in *Gamage* that while other jurisdictions require the attachment of the affidavit on the theory that it explains to the occupant the reasons for the intrusion, physical attachment under Maine law does not assure that the occupant will be apprised of the reasons for the search since the search may be valid absent even presentation of the warrant. *Id.* Accordingly, we find no error in the denial of the defendant's motion to suppress the cocaine, marijuana, and drug paraphernalia obtained as a result of the search.

## SUFFICIENCY OF EVIDENCE TO SUPPORT THE VERDICT

The defendant concedes that there was ample evidence from which a jury could rationally find that someone possessed cocaine and was trafficking in marijuana, but contests the sufficiency of the evidence linking him to the drugs. He contends that in the absence of evidence of a direct sale or other form of trafficking, the State must rely on the inference of trafficking that may be drawn from the intentional and

warrant and a receipt for the property taken. If the person is not present, the officer shall leave the copy of the warrant and the receipt at the premises. The return shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence of the person from whose possession or premises the property was taken, if he is

present, or in the presence of at least one credible person other than the applicant for the warrant. It shall be verified by the officer. The judge shall upon request deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.

knowing possession of greater than two pounds of marijuana. *See* 17–A M.R.S.A. § 1103(3) (1983). He further asserts that the crime of unlawful possession[3] and the foundation for a Section 1103(3) inference in an unlawful trafficking charge depend upon proof of an exclusive possession that is lacking in this case. Assuming without deciding that no basis other than the inference exists for an unlawful trafficking conviction as defendant contends, we find no merit to his assertion that the possession, as an element of either the unlawful possession charge or the Section 1103(3) inference, must be exclusive. We rejected this argument in *State v. Gellers*, 282 A.2d 173, 178 (Me.1971), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2047, 32 L.Ed.2d 337 (1972), where we recognized:

> possession ... need not always be exclusive nor need it be actual physical possession. It is sufficient proof of possession if it can be established beyond a reasonable doubt that the drugs involved were subject to his dominion or control.

*See also State v. Lambert*, 363 A.2d 707, 711 (Me.1976) (the defendant's constructive possession of drugs shown by his knowledge of their presence coupled with his ability to maintain control over them or reduce them to his physical possession).

 After careful review of the record, we are satisfied that the jury had before it sufficient evidence to justify a finding that the drugs involved were subject to the defendant's dominion and control. Although not present during the search, the defendant and his family had lived in the house, of which he was an owner, for the past four to five years. Although other individuals had lived in the house during this period, Ellis's next-door neighbor testified that the last one had left after the summer of 1984. The location of the marijuana and cocaine, in what could be inferred to be the defendant's closet and dresser, further supports a finding of his constructive posses-

sion of the drugs. *See State v. Lambert*, 363 A.2d at 711.

The defendant's remaining arguments with respect to evidentiary rulings and the propriety of the sentence imposed are without merit and require no discussion.

The entry is: Judgment affirmed.

All concurring.

---

**3.** 17–A M.R.S.A. § 1102 (1983) provides that a person is guilty of unlawful possession of a scheduled drug if he "intentionally or

knowingly possesses what he knows or believes to be a scheduled drug, and which is, in fact, a scheduled drug...."