**STATE of Maine**

v.

**Timothy FLICK.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 10, 1990.

Decided July 25, 1990.

David W. Crook, Dist. Atty., Evert Fowle, Asst. Dist. Atty., Augusta, for plaintiff.

Richard McCarthy, Burky & Wiers, Pittsfield, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

ROBERTS, Justice.

Timothy Flick appeals his conviction in Superior Court (Somerset County, *Brennan, J.*), following a jury trial, of reckless conduct with the use of a dangerous weapon, 17–A M.R.S.A. § 211 (1983) (Class C). He argues that the court should not have granted the State's motion to amend the indictment, should not have admitted the testimony of a ballistics expert, and should have allowed Flick to testify about the illegal drug activities of persons who were nearby when the incident occurred. We affirm.

One of the victims, Ronald West, testified that on June 4, 1988 at about 2:00 a.m., he and Todd Labelle saw Flick staggering in the middle of Main Street in Fairfield. Flick was yelling and swearing and appeared drunk. West did not know Flick, but tried unsuccessfully to persuade him to get out of the road, and then picked him up and put him on the side of the road. Flick kicked and swore at West and headed back for the road. This time West grabbed him and threw him up against a telephone pole. Flick then went into his apartment and came back out with a pistol in hand, pointed down, swearing and saying, "I'm going to kill all you Americans." Flick came toward the road, pointed the gun in the direction of West and Labelle and fired a shot. Neither man was hit. The police arrived and arrested Flick.

Flick testified that West and Labelle beat him and that he took up the gun in self-defense. He testified that he stumbled with the gun in hand, and as he tripped the gun discharged. He testified that the gun could have been pointed toward the house across the street, but he did not intend to point it in that direction, and he never fired it over the heads of West or Labelle. Ellie Emery, who lived nearby, testified that she found a hole in the wall and a bullet in her upstairs bedroom, near her bed, about two or three weeks after the incident.

The defendant first argues that the court erred in granting the State's motion to amend the indictment on the day of trial. The original indictment stated that Flick recklessly created a substantial risk of serious injury to Ronald West by firing a gun in his direction. It was amended to add that Flick put other persons in the immediate vicinity, including Ellie Emery, at risk. The defendant's lawyer conceded that he had known for two or three months before trial that Emery discovered the bullet.

The court may "permit the amendment of an indictment charging an offense other than a Class D or Class E crime at any time before verdict or finding if the amendment does not change the substance of the offense." M.R.Crim.P. 7(e). "A substantive amendment is one that changes the nature or grade of the offense charged.... If, however, the change in an indictment does not alter any fact which must be proved to make the act charged a crime, the amendment is formal." *State v. Larrabee*, 377 A.2d 463, 465 (Me.1977) (citations omitted). Flick argues that the amendment to include another victim changes the substance of the offense. We disagree. Under 17–A M.R.S.A. § 211 (1983), the State need only prove that the defendant acted recklessly to create a substantial risk of serious bodily injury to "an-

other person." The State is not obligated to identify by name the particular person or persons put at risk. *See State v. Dube,* 478 A.2d 1138 (Me.1984). The amendment of the indictment to include Emery, who is described in the amendment as being a person in the immediate vicinity of West, was not substantive.

 Flick's second contention is that the testimony of a ballistics expert should have been excluded as a sanction pursuant to M.R.Crim.P. 16(d) because the ballistics tests were not performed until the day before trial even though the bullet had been available for several months. After Flick testified, the State called the expert to testify that the bullet found in Emery's apartment was fired from Flick's pistol. The court held that the evidence was relevant to how and where the bullet was fired. It noted that the defendant had had the chance to talk with the expert a few hours before he took the stand, and gave him the opportunity to offer other witnesses on the issues raised by the testimony, but he declined. The court has broad discretion under Rule 16(d) to resolve discovery violations. *State v. Perry,* 552 A.2d 545, 547 (Me.1989). In this case, the defendant did not request a continuance, but asked only that the evidence be excluded. The court acted within its discretion in denying his request.

Finally, the defendant argues that the court erred in excluding his testimony that he believed West and Labelle were involved in illegal drugs. The defendant sought to introduce the evidence to prove that West and Labelle had a propensity toward violence and that he picked up the gun in self-defense. He testified on voir dire that he had overheard a conversation between Labelle and someone else about Labelle's dealings with an "illegal business." The court properly excluded any testimony about West because Flick testified that he did not know him and had never seen him before. The error, if any, regarding Flick's testimony about Labelle was harmless because it was uncontroverted that West and Labelle acted together to restrain Flick and that West treated Flick

violently in Labelle's presence before he picked up the gun. Thus, the jury could have no doubt about Flick's genuine belief in Labelle's violent propensities.

The entry is:

Judgment affirmed.

All concurring.