**STATE of Maine**

v.

**Michael NAVARRO.**

Supreme Judicial Court of Maine.

Argued Feb. 2, 1993.
Decided March 2, 1993.

Janet T. Mills, Dist. Atty., Kevin J. Regan, Asst. Dist. Atty., Vicki S. Mathews, law student intern (orally) Auburn, for plaintiff.

William Maselli, (orally) Auburn, for defendant.

Before WATHEN, C.J. and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Michael Navarro appeals from the Superior Court (Androscoggin County, *Delahanty, C.J.*) judgment entered on a jury verdict finding him guilty of aggravated trafficking of scheduled drugs, 17–A M.R.S.A. §§ 1103 and 1106 (1983 & Supp. 1992). Navarro argues that the Superior

Court committed reversible error by: (1) denying his motion to suppress the marked currency found on his person during a search incident to his arrest; (2) admitting in evidence the testimony of a chemist concerning his analysis of the powder in issue as well as the certificate of analysis; (3) allowing the State to amend its indictment after the close of the State's case; and (4) denying his motion for a new trial on the ground that the State had affirmatively manipulated the trial process to deny him access to the testimony of a material exculpatory witness. Navarro also challenges the sufficiency of the evidence. Finding no reversible error, we affirm the judgment.

## Facts

Under police supervision, Ricky Breton, a police informant, attempted to buy a controlled drug from Navarro with marked funds. Rebuffed by Navarro, Breton asked (co-defendant turned State's witness) Tammy Violette to purchase the cocaine for him. Breton gave Violette the marked funds and a short time later she returned with a package of cocaine. The police, who were outside, observed Violette go into Navarro's apartment and then return to her apartment shortly thereafter. According to Violette's testimony, when she went to Navarro's apartment, Navarro answered the door, took the marked funds and handed Violette a bag of cocaine. Based on the controlled purchase, as well as other surveillance information, a warrant was obtained to search Navarro's apartment, and on entry, five persons were placed under arrest. A search of Navarro revealed a marked bill used during the controlled cocaine purchase. Inspection of the apartment revealed cash, including a marked bill from the earlier drug transaction, two bags of white powder suspected to be cocaine, a radio scanner set to the Lewiston Police frequency, and a box of Zig–Zag papers and sandwich baggies.

## Procedure

Navarro, along with Antonio Cabeja, Fernando Trinidad, Sergio Santana and Tammy Violette, was indicted for aggravated trafficking in a schedule W Drug, namely, cocaine, pursuant to 17–A M.R.S.A. §§ 1103 and 1106. Specifically, the indictment charged that the defendants did:

> knowingly traffick what they knew or believed to be a scheduled drug, namely, cocaine, and which is, in fact, a scheduled W drug, by intentionally or knowingly possessing said cocaine with the intent to sell, barter, trade, exchange or otherwise furnish it for consideration *to Ricky Breton*, and at the time of the offense, Defendants were on or within 1,000 feet of real property comprising a private or public elementary or secondary school.

(emphasis added). The Superior Court (*Bradford, J.*), finding that there was probable cause for his arrest, denied Navarro's pretrial motion to suppress the evidence secured at the time of his arrest. Two days before the start of the trial, co-defendant Sergio Santana filed a jury trial waiver effectively severing his trial from that of Navarro. A day before trial, Navarro filed a motion to dismiss his indictment, or in the alternative, to continue the trial, alleging, *inter alia*, that the State had refused to make Tammy Violette or Sergio Santana available, which motion was denied. Further, Navarro sought, to no avail, to have Santana's attorney, as well as the District Attorney, offer evidence regarding any plea bargain between the State and Santana and to explain why the plea would not be entered prior to his trial.

Following the trial, the jury found defendant Navarro guilty of aggravated trafficking in cocaine as charged and Navarro unsuccessfully sought a new trial.

Navarro then filed this timely appeal.

### I

### *Denial of motion to suppress*

At the hearing on Navarro's motion to suppress the evidence seized incident to his arrest, the court heard the testimony of Michael Buchanan that on entry into the apartment, he saw Navarro lying on the floor between the living room and kitchen where he had apparently been placed by another officer. Buchanan immediately handcuffed Navarro and informed him that

he was being arrested for violation of state narcotic laws. After drugs had been found on the premises, Buchanan proceeded to search Navarro's person. Buchanan found one of the marked bills used in the controlled drug buy.

Navarro argues that since "no evidence accrued during the execution of the [search] warrant prior to [his] arrest" that established probable cause for the arrest, the evidence that was seized from him during his arrest should have been suppressed. The State contends that the search was incident to a lawful arrest.

█ "Probable cause to arrest 'exist[ed if] facts and circumstances within the knowledge of the officers and of which they [had] reasonably trustworthy information would warrant a prudent and cautious person to believe' " that Navarro had violated state narcotics laws. See State v. Fogg, 410 A.2d 548, 550 (Me.1980). Whether probable cause exists to arrest an individual is determined by the particular facts and circumstances under which the arrest occurred. State v. Cote, 518 A.2d 454, 456 (Me.1986). The court's finding of probable cause will not be set aside unless clearly erroneous. State v. Fogg, 410 A.2d 548, 550 (Me.1980).

█ The officers knew that cocaine had been sold recently from the apartment while Navarro was present. Further, on entry they found the door barricaded and the occupants, including Navarro, running around the apartment. The record supports the finding by the court of probable cause to believe that Navarro had violated the law. The motion to suppress was properly denied.

## II

*Admission in evidence of the testimony of a chemist concerning his analysis of the powder and the certificate of analysis*

At trial, Roger Morgner, a chemist with the Department of Human Services, testified on behalf of the State that the chemical analysis of the substance seized indicat-ed that it contained cocaine. Morgner also prepared a certificate of the analysis.

When the State attempted to introduce the certificate in evidence, Navarro asked for, and received, permission to cross-examine Morgner. He established that Morgner had no independent recollection of the tests he performed on the samples in question, and that the papers, on which Morgner's testimony was relying, were in fact copies of his original notes, which were in Morgner's office in Augusta.

The court, over Navarro's objection, admitted the certificate and denied Navarro's motion to strike Morgner's testimony on the ground that its admission violated the best evidence rule articulated in *State v. Degen*, 552 A.2d 2 (Me.1988). On appeal, Navarro challenges this ruling.

### A. The Testimony

█ We agree with Navarro that *State v. Degen* controls. Like the present case, in *Degen*, a chemist read at trial from copies of his notes, the originals of which were in Augusta. *Degen*, 552 A.2d at 3. In *Degen*, we reasoned that while the testimony met the requirements for recorded recollection, material being used as past recollection recorded is subject to the best evidence rule. *See id.* 552 A.2d at 3. We proceeded to reach the conclusion, which is inexorable in this case, that the testimony in question was admitted contrary to the best evidence rule. *See id.;* M.R.Evid. 1002.

As in *Degen*, however, the admission of Morgner's testimony was harmless error. As we noted in *Degen:*

"[w]hen it comes to ... appeal, an asserted error in admitting secondary evidence may be classed as harmless. The purpose of the best evidence rule is to secure the most reliable information as to the contents of a document when its terms are disputed. The rule is not an end in itself. Consequently, if complaining counsel is asked whether there is an actual dispute as to the terms of the writing and he cannot give assurance that such a good faith dispute exists, any deviation from the rule would be harm-

less error." M.R.Evid. 1004 advisers' note; Field & Murray, *Maine Evidence* pp. 418–19 (1987).

*Degen,* 552 A.2d at 4. In this case, the State properly points out that at no point did Navarro question the accuracy of the photocopies of the chemist's notes or his underlying analysis. We accordingly conclude that the error was harmless. *See* M.R.Crim.P. 52(a).

### B. The Certificate

We agree with Navarro that the admission of the certificate was error. Title 17–A M.R.S.A. § 1112 (1983) provides in relevant part that:

> 1. A laboratory which receives a drug or substance from a law enforcement officer ... for analysis as a scheduled drug shall, if it is capable of so doing, analyze the same as requested, and shall issue a certificate stating the results of such analysis. Such certificate ... shall be admissible in evidence in any court of the State of Maine, and shall be prima facie evidence that the composition, quality and quantity of the drug or substance are as stated therein, *unless* with 10 days written notice to the prosecution, the defendant requests that a qualified witness testify as to such composition, quality and quantity[,]

17–A M.R.S.A. § 1112 (1983) (emphasis added). Navarro filed a timely motion to have the State produce a qualified witness.

■ The statutory language is clear. Once the defendant requests a qualified witness, the certificate is neither admissible nor prima facie evidence of the "composition, quality, and quantity of the drug or substance stated therein." *See id.* Once the request is made, the State has the burden of producing a witness who can testify as to the analysis procedures and results.

■ In this case, however, we conclude that the admission of the certificate was harmless error. *See* M.R.Crim.P. 52(a); *State v. Bouchard,* 489 A.2d 517, 520 (Me. 1985). The chemist's testimony was entirely consistent with the certificate and was sufficient to allow the jury to conclude that the substance seized from Navarro's apartment was cocaine.

### III

### Amendment of the Indictment

The indictment specifically charged that Navarro furnished cocaine "to Ricky Breton." After the close of the State's case-in-chief, Navarro moved for a judgment of acquittal on the ground that there was no evidence that he had the intent to sell cocaine to Ricky Breton. The State, arguing that the words were surplusage, moved to amend the indictment by deleting "to Ricky Breton." The State's motion was granted over the defendant's objection.

Navarro, on appeal, argues that his entire trial strategy was based on the "fact that no intent to sell to Breton could be proved by the State," and accordingly, the trial court's decision to allow amendment of the indictment, over his objection, deprived him of due process and a fair trial.

■ Maine Rule of Criminal Procedure 7(e), pursuant to which the amendment was made, provides that the "court may permit the amendment of an indictment charging an offense ... at any time before verdict or finding if the amendment does not change the substance of the offense." M.R.Crim.P. 7(e). Thus, "an indictment may be amended as to matters of form." 1 Cluchey & Seitzinger, *Maine Criminal Practice;* III–48, § 7.11 (1992), *see State v. Flick,* 577 A.2d 1192, 1193 (Me.1990) (amendment is not substantive if the change in indictment does not alter any fact which must be proved to make the act charged a crime). Dismissal of a portion of the language of the indictment, that does not alter the offense charged against the defendant, is permissible. *See State v. Pinnette,* 340 A.2d 17, 24 (Me.1975). It is apparent that the deletion of the words "to Ricky Breton" is a change in form, and not substance. The words are surplusage. The deletion of the words does not alter any fact that must be proved to make the act charged a crime. Thus, it follows that the change is permissible. *See, e.g. State v. Flick,* 577 A.2d 1192, 1194 (Me.1990).

Navarro argues, however, that the indictment was at variance with the proof offered at trial and that the variance, because of the way in which it prompted him to structure his defense, was prejudicial to his due process rights and thus fatal. *See State v. Vachon,* 482 A.2d 864, 867 (Me. 1984) (a variance is fatal only if it is prejudicial to the rights of the defendant).

■ We view the consequence of a claimed variance of proof from pleading by the "harmless error" standard of M.R.Crim.P. 52(a). *Vachon,* 482 A.2d at 867. A variance is fatal only if the defendant is exposed to unfair surprise at trial or to the risk of double jeopardy. *Id.; see also State v. Maples,* 343 A.2d 583, 587 (Me.1975). Clearly, the thrust of Navarro's argument is that he was unfairly surprised at trial as a result of the variance and the resultant amendment.

■ We are unconvinced that Navarro suffered any surprise, let alone unfair surprise, that prejudicially affected his substantial rights. The indictment plainly apprised Navarro of the statutes under which he was being prosecuted. Any doubt raised by the surplus language could, and should have been, dispelled by reference to the statutes which clearly do not require the State to plead or prove the identity of the individual to whom the drugs were "trafficked." *See* 17–A M.R.S.A. §§ 1103, 1106 (1983 & Supp.1992). While we recognize, and reaffirm, that a variance that exposes a defendant to unfair surprise or the risk of double jeopardy can be fatal, *see Vachon,* 482 A.2d at 867, a defendant cannot structure his defense around a technical error in the indictment as a means of creating "unfair surprise." Since the change was as to form not substance, there was no error. *See* M.R.Crim.P. 52(a); *State v. Flick,* 577 A.2d at 1194.

### IV

#### *Denial of motion for new trial*

Navarro next contends that the State acted improperly in allowing Sergio Santana, one of the other individuals charged, to enter into a plea bargain. Navarro's contention is that the State, by allowing or encouraging Santana's plea agreement, deprived Navarro of a material, exculpatory witness.

During the hearing on Navarro's motion for a new trial, the Superior Court heard testimony from trial counsel for Santana that he advised Santana to invoke his fifth amendment privilege in order to ensure that the tentative plea arrangement would not be jeopardized. Navarro attempted to convince the court that had the State not "engineered" the delay, Santana's plea would have been entered before Navarro's trial and Santana would not have been allowed to invoke his fifth amendment privilege. If unable to invoke his privilege, Navarro apparently expected Santana to provide evidence that would have established that the cocaine was his and not Navarro's.

The motion justice was unconvinced, specifically finding that there was no evidence of State action calculated to deprive Navarro of testimony, and that Santana's decision to invoke the fifth amendment privilege was tactical in nature and based on the advice of his counsel.

■ We review the denial of a motion for a new trial for clear error. *See State v. Lord,* 458 A.2d 432, 434 (Me.1983). A factual finding is clearly erroneous only if there is no competent evidence in the record to support it. *See Hamm v. Hamm,* 584 A.2d 59, 62 (Me.1990). Based on the testimony presented, the court could have properly found as it did. There was no error.

### V

#### *Sufficiency of the evidence*

In reviewing a challenge to the sufficiency of the evidence, this Court views the evidence in the light most favorable to the State to determine whether a jury could rationally find every element of the criminal charge beyond a reasonable doubt. *State v. Philbrick,* 551 A.2d 847, 852 (Me. 1988).

**414**

17–A M.R.S.A. § 1103 (1983 & Supp. 1992) provides in relevant part that "[a] person is guilty of unlawful trafficking[1] in a scheduled drug if he intentionally or knowingly traffics in what he knows or believes to be any scheduled drug, and which is, in fact, a scheduled drug...."

Navarro's specific contention is that there was insufficient evidence to support a jury finding that he possessed the cocaine. We disagree. In *State v. Ellis*, 502 A.2d 1037 (Me.1985), we reaffirmed that:

> possession ... need not always be exclusive nor need it be actual physical possession. It is sufficient proof of possession if it can
>
> be established beyond a reasonable doubt that the drugs involved were subject to his dominion and control.

*Ellis*, 502 A.2d at 1040. In *Ellis*, the defendant was not present during the search. *Id.* at 1040. Nevertheless, noting that Ellis lived in, and owned, the house where the drugs were seized from his dresser, we concluded that the evidence would justify a finding that the drugs were subject to the defendant's dominion and control. *See id.*

Similarly, in the present case, the evidence revealed that Navarro lived in the apartment where the drugs were seized. Furthermore, Violette's testimony established that Navarro was aware of, and involved in, the transfer of cocaine. This evidence is sufficient to support a finding of possession. *See id.* 502 A.2d at 1040.

The entry is:

Judgment affirmed.

All concurring.

---

**1.** 17–A M.R.S.A. § 1101 defines "traffick" as including "[t]o sell, barter, trade, exchange or otherwise furnish for consideration; or" to possess with the intent to do any of these mentioned acts. *See* 17–A M.R.S.A. § 1101(17)(C)–(D).