MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:     2015 ME 148
Docket:       Pen-14-373
Argued:       September 16, 2015
Decided:      November 17, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

DANA WILSON

SAUFLEY, C.J.

[¶1]  Dana Wilson was charged with and convicted of crimes arising out of his alleged illegal possession of sexually explicit digital material, specifically, digital images and videos depicting the sexual assault or exploitation of children. Asserting that there was insufficient evidence to sustain the convictions for two counts of possession of sexually explicit material (Class C and Class D) pursuant to the statute in effect at the time of the crimes, 17-A M.R.S. § 284(1) (2010),[1]

---

[1] The statute in effect at the time provided, in relevant part:

**Possession of sexually explicit material**

**1**. A person is guilty of possession of sexually explicit material if that person:

**A.** Intentionally or knowingly transports, exhibits, purchases or *possesses* any book, magazine, newspaper, print, negative, slide, motion picture, computer data file, videotape or other mechanically, electronically or chemically reproduced visual image or material that the person knows or should know depicts another person engaging in sexually explicit conduct, and:

**(1)** The other person has not in fact attained 16 years of age; or

Wilson challenges the judgment of conviction entered in the Unified Criminal Docket (Penobscot County, *A. Murray, J.*) following a bench trial. He argues that the court misinterpreted the meaning of "possesses" in finding that he had possessed sexually explicit material depicting a person under twelve years of age, *id.* § 284(1)(C), and a person under sixteen years of age, *id.* § 284(1)(A). We affirm the judgment.

## I. BACKGROUND

[¶2] The following facts found by the trial court are supported by competent evidence in the record. *See State v. Christian*, 2012 ME 51, ¶¶ 7, 9-10, 40 A.3d 938. Between January 28, 2010, and September 5, 2010, law enforcement

---

**(2)** The person knows or has reason to know that the other person has not attained 16 years of age.

Violation of this paragraph is a Class D crime;

. . . .

**C.** Intentionally or knowingly transports, exhibits, purchases or *possesses* any book, magazine, newspaper, print, negative, slide, motion picture, computer data file, videotape or other mechanically, electronically or chemically reproduced visual image or material that the person knows or should know depicts another person engaging in sexually explicit conduct, and:

**(1)** The other person has not in fact attained 12 years of age; or

**(2)** The person knows or has reason to know that the other person has not attained 12 years of age.

Violation of this paragraph is a Class C crime.

17-A M.R.S. § 284(1) (2010) (emphasis added). Section 284(1) has been amended since the time when the charged crimes were alleged to have been committed to include criminal liability for "access[ing] with intent to view" explicit material. *See* P.L. 2011, ch. 50, §§ 1, 2 (effective Apr. 25, 2011) (codified at 17-A M.R.S. § 284(1)(A), (C) (2014)).

observed that sexually explicit material known to violate 17-A M.R.S. § 284(1)(A)(1) and (C)(1) was available to be shared with others through a peer-to-peer network using Wilson's IP address.[2] An ICAC (Internet Crimes Against Children) report was provided to local law enforcement officers, who went to the Wilson home and seized multiple computers on February 14, 2011.

[¶3] The computers underwent forensic evaluation in 2011. Evidence of images or videos depicting child sexual assault or exploitation was found on two Toshiba laptop computers (identified as the Z9 and the 99 computers), though no such evidence was found on the other seized computers—a Dell laptop and one or more desktop computers. Both of the Toshiba laptops had FrostWire software installed on them, which can be used in connection with downloading such images by allowing access to peer-to-peer networks.[3] Sexually explicit images or videos violating section 284(1)(A) and (C) were downloaded onto each of the Toshiba laptops one or more times using FrostWire.

[¶4] The keyword "PTHC," which stands for pre-teen hard core, is commonly part of the title of a video depicting sexually explicit conduct involving a child. The forensic searches on the two Toshiba laptops produced multiple hits

---

[2] An IP address is the designated address of the electronic device at issue, here a router in the Wilson home. IP stands for "Internet Protocol."

[3] Such peer-to-peer networks can be used for file sharing for benign purposes as well as the sharing of illegal images. The programs allow users to share files between their computers.

4

for PTHC.  The court found that the term would not be found on the hard drives of the computers unless someone searched for sexually explicit videos depicting children.

[¶5]  Because of the ease of using a peer-to-peer network, it is no longer a common practice among those who seek out sexually explicit material to keep a collection of viewable images or videos on the computer.  When images or videos are deleted, thumbnail images are often left behind on the computer.[4]  Twelve thumbnail images that had been created sometime after a 2009 operating system upgrade were found on the Z9 computer.  The videos that generated the thumbnail images may have been deleted, but the thumbnail images remained.  These thumbnail images constitute sexually explicit material depicting children prohibited by section 284(1)(A) and (C).[5]

[¶6]  In addition, two sexually explicit videos involving children were found in the recycle bin on the 99 laptop.  They had been deposited in that bin on February 12, 2011.  A forensic search for the PTHC keyword produced 1,200 hits

---

[4]  As the detective who examined the computers testified, when programs that scrub or delete images after viewing are used to remove illegal videos or images from a computer, the programs often leave thumbnail images of the videos or images that had existed on the computer.  Such thumbnail images, like those discovered in this case, appear in the unallocated space on the computer.

[5]  Wilson stipulated that one or more of the thumbnail images met the statutory definition of sexually explicit material.

on that computer, reflecting that sexually explicit material depicting children had previously been on that computer.

[¶7]  The illegal images and videos had been played on both computers, as demonstrated by an examination of the media players on both computers and a "preview" prefix attached to at least one of the files that had a path back to an incomplete FrostWire folder on one of the computers.  The "preview" prefix indicates that at least some portion of the video was played.

[¶8]  Wilson admitted to law enforcement that he had seen "child pornography" on his computer after someone had sent the material to him.  To see such sexually explicit images delivered through a peer-to-peer network, a user must take some affirmative steps to access them.

[¶9]  Although Wilson suggested that his adult son, who moved into the home in January 2010, may have been responsible, the 2011 forensic evaluation of the son's Dell laptop—which ceased functioning without warning at the end of 2010—contained no sexually explicit images involving children.  No FrostWire or other peer-to-peer file sharing program was found on that Dell laptop, and Wilson told law enforcement that someone had sent pornography to *him*—not to his son.  As Wilson's ex-wife and son testified, Wilson used his computers a lot, including for his work as a disc jockey, and they did not see anyone else using the

6

computers, even during the period when only Wilson and his son were living in the home.

[¶10]  On June 27, 2012, Wilson was charged by indictment with possession of sexually explicit material depicting a person under twelve years of age (Class C), 17-A M.R.S. § 284(1)(C).  Wilson originally waived the right to a jury trial and, on May 23, 2013, he entered a plea of no contest.  After obtaining new counsel, Wilson moved to withdraw his plea, and the court (*Anderson, J.*) granted his motion on January 30, 2014.  The State filed a supplemental complaint on February 3, 2014, charging Wilson with a second count, this one alleging possession of sexually explicit material depicting a person under sixteen years of age (Class D), 17-A M.R.S. § 284(1)(A).

[¶11]  The court (*A. Murray, J.*) held a bench trial on June 2 and 6, 2014. The court held a separate hearing to announce the verdict on July 1, 2014, during which it found Wilson guilty of both charges.  By judgment entered on August 26, 2014, the court sentenced Wilson to two years and six months in prison, with all but nine months suspended, and four years of probation for the Class C conviction; and to five months in prison for the Class D conviction, to run concurrently. Wilson appealed from the judgment and applied for leave to appeal from his sentence.  *See* 15 M.R.S. §§ 2115, 2151 (2014); M.R. App. P. 2, 20.  We denied

his request for leave to appeal from his sentence, *see* 15 M.R.S. § 2152 (2014); M.R. App. P. 20(f), and now consider his appeal from the judgment of conviction.

## II. DISCUSSION

[¶12] Wilson argues that the court interpreted the term "possesses" too broadly when finding him guilty of possession of sexually explicit material. Specifically, he contends that neither evidence of an incomplete download nor any other evidence demonstrated possession.

[¶13] In reviewing a conviction, we view "the evidence admitted at trial in the light most favorable to the State" to determine whether the fact-finder could rationally have reached its findings beyond a reasonable doubt. *State v. Beckwith*, 2015 ME 72, ¶ 2, 117 A.3d 1049 (quotation marks omitted).[6] Because the court here specifically found facts in reaching its verdict, we review those findings for clear error and will uphold them if supported by competent evidence in the record. *See Christian*, 2012 ME 51, ¶¶ 7, 9-10, 40 A.3d 938; *State v. Heald*, 382 A.2d 290, 302 (Me. 1978) ("On issues of fact triable by the court alone, even though in the course of a criminal prosecution, the findings of the presiding justice on such non-jury matters are not ordinarily to be set aside unless clearly erroneous."). In a nonjury trial, "the court is free to determine which witnesses to believe and which

---

[6] Because "the trial was 'jury waived,' the issue of the sufficiency of the evidence may be considered on appeal even though motions for judgment of acquittal were not made." *State v. Gatcomb*, 389 A.2d 22, 24 (Me. 1978).

evidence to accept or reject as trustworthy or untrustworthy" as long as there is evidence "by which a fact-finder could rationally conclude, beyond a reasonable doubt, that the crime was committed." *State v. Ahmed*, 2006 ME 133, ¶ 21, 909 A.2d 1011.

[¶14] The statute in effect at the time provided, in relevant part, "A person is guilty of possession of sexually explicit material if that person [i]ntentionally or knowingly . . . *possesses* any . . . motion picture [or] computer data file" depicting another person "engaging in sexually explicit conduct" and the other person was under sixteen years of age (Class D), 17-A M.R.S. § 284(1)(A)(1), or was under twelve years of age (Class C), *id.* § 284(1)(C)(1). The term "possesses" was not defined by statute, *cf.* 17-A M.R.S. § 2 (2010), so section 284(1) must be given its "ordinary meaning from a reading of the language that the Legislature used." *State v. Dansinger*, 521 A.2d 685, 688 (Me. 1987); *see State v. Brown*, 2014 ME 79, ¶ 13 n.5, 95 A.3d 82 ("Unless the statute itself discloses a contrary intent, words in a statute must be given their plain, common, and ordinary meaning, such as people of common intelligence would usually ascribe to them." (quotation marks omitted)).

[¶15] We have defined "possession" as the term pertains to physical objects. For example, possession of drugs occurs when the drugs are "'subject to [the defendant's] dominion and control.'" *State v. Deering*, 1998 ME 23, ¶ 12, 706

A.2d 582 (quoting *State v. Ellis*, 502 A.2d 1037, 1040 (Me. 1985) (alteration in original)); *see also State v. Erving*, 558 A.2d 703, 704 (Me. 1989) ("Possession of a physical object may be proved by showing that the accused . . . either had immediate physical control . . . of the object or knew where it was and had the intention and ability to gain physical control . . . of it." (quotation marks omitted)).

[¶16]   The challenge in the matter before us is to apply those concepts to digital images found on specific computers.  The ordinary meaning of "possess" is "to have and hold as property," "have a just right to," "be master of," or "own." *Webster's Third New International Dictionary of the English Language Unabridged* 1770 (2002); *see also Possess*, *Black's Law Dictionary* (9th ed. 2009) (defining "possess" as "[t]o have in one's actual control; to have possession of"); *Possession*, *Black's Law Dictionary* (defining "possession" as "[t]he fact of having or holding property in one's power; the exercise of dominion over property," or "[t]he right under which one may exercise control over something to the exclusion of all others").

[¶17]   The court's findings in this case demonstrate its understanding that, for Wilson to be found guilty, he had to have—in accordance with the plain meaning of "possess"—held, owned, or controlled the digital images in question. The question becomes whether there is sufficient evidence that Wilson held, owned, or controlled the images to support a conviction for possession of them.

10

[¶18]  To establish Wilson's intentional holding, ownership, or control of prohibited material, the State offered both *direct* evidence that Wilson held on his computers in February 2011 two partial video files and twelve thumbnail images of sexually explicit images depicting children, and *circumstantial* evidence from forensic computer experts that Wilson had owned and viewed those images during the preceding two years using FrostWire.  *See State v. Reed*, 2013 ME 5, ¶ 13, 58 A.3d 1130 ("[C]ircumstantial evidence is no less conclusive than direct evidence in supporting a conviction[.]" (quotation marks omitted)).  The court did not have to believe Wilson's suggestion to the police during questioning that his son might be responsible for having downloaded the child pornography; it had evidence before it that Wilson used the computers in question extensively and almost exclusively, and it could believe other evidence that Wilson's son did not use Wilson's computers.  *See Ahmed*, 2006 ME 133, ¶ 21, 909 A.2d 1011.

[¶19]  Given the evidence presented at trial, and applying the plain meaning of the statute, the court's findings are not clearly erroneous, and those facts support the court's ultimate finding of guilt beyond a reasonable doubt.  *See id.*; *Christian*, 2012 ME 51, ¶¶ 7, 9, 40 A.3d 938; *Heald*, 382 A.2d at 302.

The entry is:

Judgment affirmed.

**On the briefs:**

> Jamesa J. Drake, Esq., Drake Law, LLC, Auburn, for appellant Dana Wilson

> R. Christopher Almy, District Attorney, and Tracy Collins, Asst. Dist. Atty., Prosecutorial District V, Bangor, for appellee State of Maine

**At oral argument:**

> Jamesa J. Drake, Esq., for appellant Dana Wilson

> Tracy Collins, Asst. Dist. Atty., for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2012-2515
FOR CLERK REFERENCE ONLY