MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2019 ME 10
Docket:       Pen-18-13
Argued:       December 11, 2018
Decided:      January 24, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

THOMAS FERGUSON

MEAD, J.

[¶1] On November 27, 2015, Robert Kennedy was shot to death in an apartment on Center Street in Bangor; Barry Jenkins was seriously wounded in the attack. Thomas Ferguson appeals from a judgment of conviction for Kennedy's murder, 17-A M.R.S. § 201(1)(A) (2017), and the elevated aggravated assault on Jenkins (Class A), 17-A M.R.S. § 208-B(1)(A) (2017), entered by the trial court (Penobscot County, *Anderson, J.*) following a bench trial. Ferguson contends that (1) the evidence was insufficient to support the court's factual findings, as well as its ultimate finding that he was at least an accomplice in the murder of Kennedy and the shooting of Jenkins; (2) he was denied due process when the State allowed Jenkins to perjure himself when testifying at the trial; (3) the court improperly allowed two witnesses to

identify him in court; and (4) the court erred in certain evidentiary rulings. Discerning no error, we affirm the judgment.

## I. FACTS AND PROCEDURE

A.     Facts

[¶2]  Following a jury-waived trial, the court made extensive findings of fact beyond a reasonable doubt.  We review those findings for clear error, "uphold[ing] them if supported by competent evidence in the record." *State v. Wilson*, 2015 ME 148, ¶ 13, 127 A.3d 1234.

[¶3]  The court found that on November 27, 2015, at about 3:30 a.m., Karen Patchell was in her apartment at 201 Center Street in Bangor with Robert Kennedy and Barry Jenkins; another woman who had been at the apartment that day, Tera Choquette, was outside.  Two men, Robert Hansley and Thomas Ferguson, quickly walked by Choquette, entered the building, and went up the stairs to Patchell's apartment, planning to kill Kennedy.

[¶4] Ferguson had a "very strong, intense" dislike of Kennedy based on a previous physical fight and a belief that Kennedy was a "rat or snitch" due to an encounter Ferguson, Hansley, and Kennedy had with Brewer police that had resulted in Kennedy being arrested.  Raised voices were heard in the apartment, and within a few seconds at least nine shots were fired by either Hansley or

Ferguson from a Bersa .40 caliber pistol, killing Kennedy and seriously wounding Jenkins. Ferguson had obtained the pistol as payment for a drug debt.

[¶5] Hansley and Ferguson rushed out and fled. At about 3:45 a.m., a video camera at the federal building in Bangor recorded two people fitting their description walking from the general direction of Center Street in the general direction of Hammond Street. Ferguson's friend, Brittany,[1] lived on Hammond Street, and she had arranged for him to get the key to her apartment the previous day so that he could stay there while she was away for Thanksgiving. The court found, based on DNA evidence, the unique way in which they were packaged, and their proximity to each other, that sometime after the shooting Ferguson was involved in separately wrapping the murder weapon and a sawed-off shotgun in foil and a plastic bag; additionally wrapping the pistol in a newspaper dated November 20, 2015; and then storing the weapons on a high shelf in Brittany's closet.[2] When Brittany returned from Florida several hours

---

[1] For this person and one other, this opinion will use first names out of respect for their privacy.

[2] A State Police Crime Laboratory witness testified that DNA found on the interior of the foil in which the shotgun was wrapped was consistent with Ferguson's; Ferguson is African-American, and the random probability of the same result using the FBI's African-American database was 1 in 2,590. DNA found on the shotgun's barrel matched Ferguson's; the estimated random probability of a match using the FBI's African-American database was 1 in 22.6 million. Ferguson's DNA was not found on the pistol.

after the shooting, Ferguson was at her apartment. He left later that afternoon and returned with Hansley.

[¶6] Ferguson and Hansley had also been together for some time before the shooting. At 1:40 a.m. on November 27, the day of the shooting, a video camera at the Bangor Mall recorded them Christmas shopping. Shortly after that, Ferguson waited in a cab while Hansley sold drugs in the parking lot to Mariah, whom Hansley met when leaving the mall. Minutes later, Ferguson was the primary actor when he and Hansley sold drugs at a convenience store. Ferguson and Hansley left the store in a cab around 2:33 a.m. and were dropped off at Brittany's apartment between 2:40 and 2:45 a.m., forty-five to fifty minutes before the shooting. The court found that the distance between Brittany's Hammond Street apartment and the scene of the shooting on Center Street could be "easily" covered in forty-five minutes. Cell phone records were not definitive, but were consistent with Ferguson being in the area of Center Street when Kennedy and Jenkins were shot.

[¶7] On the afternoon following the shooting, Hansley contacted Mariah to negotiate for a ride to Portland. She agreed, and at about 6:00 p.m. she picked up Hansley and Ferguson at Brittany's apartment and drove in the direction of I-95. Bangor police had been surveilling the apartment. Before Mariah's car

reached the highway, police stopped the vehicle and arrested Hansley and Ferguson. When interviewed by police, Ferguson lied about (1) being with Hansley at the Bangor Mall early that morning, (2) having any involvement in the shooting, and (3) being on his way to Portland when he was arrested.

B. Procedure

[¶8] Ferguson was charged by complaint with murder, 17-A M.R.S. § 201(1)(A), and elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(A). A subsequent indictment added a third charge of tampering with a victim (Class B), 17-A M.R.S. § 454(1-B)(A) (2017), which was dismissed by the State on the first day of trial. Ferguson pleaded not guilty and counsel was appointed, followed later by the appointment of co-counsel.

[¶9] Ferguson moved to suppress any in-court identification of him by Choquette or Patchell on the ground that their out-of-court identifications resulted from suggestive circumstances and were therefore unreliable. Following a hearing, the court denied the motion. Ferguson also demanded a speedy trial pursuant to article I, section 6 of the Maine Constitution,[3] and shortly thereafter waived his right to a jury trial. Based in part on the speedy trial demand, and over the State's objection, the court granted Ferguson's

---

[3] The Constitution of Maine provides that "[i]n all criminal prosecutions, the accused shall have a right . . . [t]o have a speedy, public and impartial trial." Me. Const. art. I, § 6.

6

motion for relief from prejudicial joinder and ordered that he be tried separately from Hansley.

[¶10] A bench trial was held May 24-26, May 31-June 2, and June 5, 2017. On June 28, the court convened a hearing at which it announced its verdict of guilty on the remaining charges of murder and elevated aggravated assault. At a sentencing hearing on January 8, 2018, the court denied Ferguson's motions for a judgment of acquittal and for dismissal, entered judgment, and sentenced Ferguson to fifty years' incarceration on the murder count and twenty-five years, to run concurrently with the sentence for murder, on the elevated aggravated assault count. Ferguson timely appealed the convictions. He did not appeal from the sentence.

## II. DISCUSSION

A.    Sufficiency of the Evidence

[¶11] Ferguson asserts that the evidence was insufficient to support three of the court's factual findings, as well as its ultimate finding that he was at least Hansley's accomplice in the murder of Kennedy and the aggravated assault on Jenkins. The applicable standards of review are well established:

> In reviewing a conviction, we view the evidence admitted at trial in the light most favorable to the State to determine whether the fact-finder could rationally have reached its findings beyond a reasonable doubt. Because the court here specifically found facts

> in reaching its verdict, we review those findings for clear error and will uphold them if supported by competent evidence in the record. In a nonjury trial, the court is free to determine which witnesses to believe and which evidence to accept or reject as trustworthy or untrustworthy as long as there is evidence by which a fact-finder could rationally conclude, beyond a reasonable doubt, that the crime was committed.

*Wilson*, 2015 ME 148, ¶ 13, 127 A.3d 1234 (footnote, citations, and quotation marks omitted). "Any conflicts in evidence are resolved in favor of the State." *State v. Allen*, 2006 ME 20, ¶ 26, 892 A.2d 447.

1.    Factual Findings

[¶12]  Ferguson challenges the court's findings that (1) he sold drugs with Hansley on two occasions in the early morning hours of November 27, 2015; (2) he "stormed" into Patchell's apartment together with Hansley just before the shooting; and (3) he participated in wrapping the pistol that had been used to commit the crimes and that was found in Brittany's closet. Each finding is supported by competent evidence in the record; accordingly, none is clearly erroneous. *See Wilson*, 2015 ME 148, ¶ 13, 127 A.3d 1234.

[¶13]  The court's finding that Ferguson participated in drug sales with Hansley was supported by the testimony of the buyer in the case of one sale, and by the testimony of the driver of the car in which the deal was consummated in the other. The court's finding that Ferguson and Hansley

entered Patchell's apartment together was supported by the testimony of three witnesses: Patchell, who was inside the apartment; Choquette, who was outside the apartment; and Jenkins, who was in the living room and saw Ferguson and Hansley enter before he was shot.

[¶14] Finally, although the court acknowledged that Ferguson was not directly linked to the murder weapon by DNA or fingerprint evidence, it found by circumstantial evidence, as it was entitled to do, that he was connected to the handgun. *See State v. Coleman*, 2018 ME 41, ¶ 30, 181 A.3d 689 ("We have repeatedly said that a criminal conviction may be based solely on circumstantial evidence . . . ." (alteration and quotation marks omitted)). The circumstantial evidence cited by the court included that Ferguson acquired the handgun in payment of a drug debt; that the handgun was discovered on a high closet shelf in the apartment of a woman whom Ferguson described to police as his "girlfriend," and where Ferguson had stayed the night before the shooting; and that it was wrapped "in a very similar distinctive manner" as a sawed-off shotgun located next to it, which was directly linked to Ferguson by DNA evidence found on both the foil used to wrap the shotgun and on its barrel. *See supra* n.2. From that evidence, the court could infer that Ferguson "was involved in the wrapping and the storage of the murder weapon in the

apartment he was using for the night after the murder weapon was used to kill Mr. Kennedy and injure Mr. Jenkins." *See Coleman*, 2018 ME 41, ¶ 30, 181 A.3d 689 (stating that the fact-finder could "rationally infer[]" the existence of a fact beyond a reasonable doubt "based on the circumstantial evidence presented at trial").

2.      Accomplice Finding

[¶15]  Ferguson also challenges the court's ultimate finding that, at the very least, he was "guilty as an accomplice to the murder of Mr. Kennedy and the elevated aggravated assault against Mr. Jenkins."  In *State v. Anderson*, we said that

> [a] person is guilty as an accomplice of a crime committed by another person if he or she "aids or agrees to aid or attempts to aid such other person in planning or committing the crime," and has the "intent of promoting or facilitating the commission of the crime." 17-A M.R.S. § 57(3)(A) [2017]. The State must prove something more than the defendant's mere presence, but need not prove an overt act of physical assistance.  Once presence is proven, accomplice liability may attach upon the State's proof of any conduct promoting or facilitating, however slightly, the commission of the crime.

2016 ME 183, ¶ 20, 152 A.3d 623 (alteration, citation, and quotation marks omitted); *see* 17-A M.R.S. § 57 (2017).

[¶16]  From its supported factual findings, the court concluded beyond a reasonable doubt that Ferguson was at least an accomplice to the crimes

because he had a motive; he was with Hansley—who was linked to the murder weapon by fingerprint and DNA evidence—before, during, and after the shooting; he originally obtained the murder weapon and was involved in packaging and hiding it after the shooting; he was identified by Jenkins as one of his assailants; he attempted to flee to Portland with Hansley within hours of the shooting; and he falsely denied any involvement to police when he was interviewed following his arrest. That evidence, viewed in the light most favorable to the State, *see Wilson*, 2015 ME 148, ¶ 13, 127 A.3d 1234, allowed the court to rationally find that Ferguson had engaged in "conduct promoting or facilitating, however slightly, the commission of the crime." *Anderson*, 2016 ME 183, ¶ 20, 152 A.3d 623 (quotation marks omitted).

B.    Jenkins's Testimony

[¶17]  Ferguson argues that the State's attorneys suborned perjury by calling Jenkins as a witness knowing that he would testify that both Hansley and Ferguson were armed and shooting during the attack, although the ballistics evidence indicated that a single firearm, the Bersa pistol, fired all of the rounds recovered, and only Hansley was connected to that weapon by forensic evidence. From this, Ferguson asserts that "[t]he State's willingness to put such a liar on the stand even after they knew he was lying fundamentally violated

Mr. Ferguson's ability to defend himself" and charges that "the State suborned [Jenkins's] perjury."

[¶18] Ferguson is correct only to the extent that "a conviction obtained through use of *false* evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *State v. True*, 2017 ME 2, ¶ 17, 153 A.3d 106 (alteration and quotation marks omitted) (emphasis added). He bears the burden of persuasion:

> As a threshold matter, a defendant must satisfy the basic and fundamental burden of demonstrating that the information delivered at trial was perjured—not merely inconsistent with other evidence or previous testimony. A showing that trial testimony is inconsistent with other testimony or evidence does not, standing alone, demonstrate that evidence presented to the fact-finder contained intentional inaccuracies or that there had been a knowing use of false testimony. Such inconsistencies present issues of credibility and call for the weighing of conflicting or inconsistent evidence—a task that falls solidly within the province of the . . . fact-finder. The [fact-finder] is permitted to draw all reasonable inferences from the evidence and is free to selectively accept or reject testimony presented based on the credibility of the witness or the internal cogency of the content. The [fact-finder] may believe some parts of witness testimony to the exclusion of others, and may combine testimony in any way.

*Id.* ¶ 19 (alteration, citations, and quotation marks omitted).

[¶19] The trial court performed its proper role here—it critically analyzed Jenkins's testimony by examining both its inconsistencies and its corroborating support, then accepted some parts of it and rejected others in

12

finding the facts that led to its verdict. Ferguson "has not . . . demonstrated that any particular testimony about the events was perjured, much less that any perjured testimony contributed to the [court's] verdict." *Id.* ¶ 20. An error in a witness's perception or recall of events, which is all that the record supports here, is not "a false material statement [made] under oath . . . not believ[ing] the statement to be true."[4] 17-A M.R.S. § 451(1)(A) (2017). Accordingly, Ferguson has not even come close to meeting his burden of demonstrating a Fourteenth Amendment due process violation. *See True*, 2017 ME 2, ¶ 17, 153 A.3d 106.

C. In-Court Identifications

[¶20] Ferguson next contends that the court erred in allowing Choquette and Patchell to identify him in court because they were only able to do so as the result of suggestive circumstances facilitated by police prior to trial. Ferguson moved to suppress the identifications, asserting that his identity was suggested to Choquette when she overheard Jenkins tell a police officer as they rode to the hospital in an ambulance that Ferguson had shot him, and that Patchell's

---

[4] The accusation that an attorney has suborned perjury is a grave and serious matter and should not be leveled when, as here, the sole basis for the claim of perjury is the existence of evidence—including strong or compelling evidence—that is simply contrary to, or inconsistent with, the testimony given at trial. Counsel is reminded that "the consequences of . . . acerbic shrillness in the pleadings can also include revocation of *pro hac vice* privileges." Order at 2-3, *HouseCanary, Inc. v. Quicken Loans, Inc.*, No. SA-18-CV-0519-FB (W.D. Tex. Aug. 14, 2018), ECF No. 47.

identification was tainted by a police follow-up interview of Jenkins conducted at Patchell's apartment where she was present.

[¶21] The court denied the motion to suppress, finding that "neither procedure was suggestive to the extent that the State should not be permitted to ask questions concerning identity of the two witnesses." The court's factual findings are reviewed for clear error, *State v. Nigro*, 2011 ME 81, ¶ 21, 24 A.3d 1283, and its ultimate decision to admit the identification testimony is reviewed for an abuse of discretion, *State v. Davis*, 2018 ME 116, ¶ 32, 191 A.3d 1147. Although a showing of highly suggestive behavior need not necessarily involve police misconduct, Ferguson bore the initial burden of "prov[ing] by a preponderance of the evidence that the circumstances surrounding the witness's identification of him were suggestive." *Davis*, 2018 ME 116, ¶¶ 25, 30, 191 A.3d 1147.

[¶22] The matter before us does not involve the identification of an individual unknown to the witnesses. Choquette testified at the suppression hearing that before entering the ambulance she told police that "Ferg" had gone into Patchell's apartment. Regarding Patchell's identification, at the hearing the detective who conducted the interview with Jenkins at her apartment testified that he initially asked her to go into another room located at the end of a

twenty-foot-long hallway and he did not see her again during the interview. Furthermore, before identifying Ferguson at trial, Patchell testified that she met Ferguson in the summer of 2015, well before the November shooting. Accordingly, the court did not err in finding that neither witness's identification was "tainted by suggestive circumstances creating a substantial likelihood of *irreparable* misidentification." *Id.* ¶ 27 (quotation marks omitted). Ferguson remained free to argue the reliability of the identifications and the weight that the court should give them, which, as demonstrated by the court's factual findings, he did with some success. *See id.* ¶ 29.

D.      Evidentiary Rulings

[¶23]    Finally, Ferguson contends that the court erred in admitting evidence (1) of the sawed-off shotgun, (2) that he was involved in drug dealing, (3) that the murder weapon had previously been stolen and given to him in payment of a drug debt, and (4) concerning the location of his cell phone when the crime was committed. "We review a trial court's decision to admit evidence of prior bad acts pursuant to M.R. Evid. 404(b) for clear error, and its determination pursuant to M.R. Evid. 403 for an abuse of discretion." *State v. Pillsbury*, 2017 ME 92, ¶ 22, 161 A.3d 690.    The court's relevance

determinations are reviewed for clear error. *State v. Haji-Hassan*, 2018 ME 42, ¶ 13, 182 A.3d 145.

[¶24] We discern no error or abuse of discretion in the court's careful rulings that each aspect of the challenged evidence was relevant and admissible for proper purposes. *See State v. Maderios*, 2016 ME 155, ¶ 9, 149 A.3d 1145 ("[E]vidence of prior bad acts is admissible for limited purposes other than to prove propensity, in that Rule 404(b) does not render inadmissible evidence of other crimes, wrongs, or acts if the evidence is offered to demonstrate motive, intent, identity, absence of mistake, or the relationship of the parties." (quotation marks omitted)).

[¶25] Moreover, the potential for prejudice was lessened because this was a bench trial. The court stated that it would not consider evidence of bad acts "to show that a defendant might have acted in conformity therewith in the future by committing this crime," *see Steadman v. Pagels*, 2015 ME 122, ¶ 20, 125 A.3d 713, and we have noted that

> [i]t is trial judges' experience and training, and their long tradition of professionalism, that give rise to the firmly established rule that a court learned in the law is presumed to render its decision on the evidence in the case which is legally admissible even though inadmissible testimony be received. This presumption must be rebutted before the reception of such evidence by the court will be deemed prejudicial.

16

*MacCormick v. MacCormick*, 478 A.2d 678, 683 (Me. 1984) (quotation marks

omitted).  Ferguson has not rebutted the presumption here.

The entry is:

Judgment affirmed.

---

James M. Mason, Esq., Handelman & Mason LLC, Brunswick, and Justin C. Bonus, Esq. (orally), Forest Hills, New York, for appellant Thomas Ferguson

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2015-4405
FOR CLERK REFERENCE ONLY