MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 16
Docket:        Som-21-418
Argued:        October 4, 2022
Decided:       March 2, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.


STATE OF MAINE

v.

DUANE MARQUIS


HORTON, J.

[¶1]  Duane Marquis appeals from a judgment convicting him of two counts of gross sexual assault (Class C), 17-A M.R.S. § 253(2)(F) (2018),[1] entered by the trial court (Somerset County, *Mullen, C.J.*) after a jury-waived trial.  Marquis engaged in sexual acts with a high school student who was taking a driver's education class taught by Marquis at the victim's school as an elective course for credit.  The issue on appeal is whether the court erred in determining that Marquis, who operated his own driver's education business and was not an employee of the school, was an "other official" under the relevant statute, which provided that a person is guilty of gross sexual assault if he engages in a

---

[1] Title 17-A M.R.S. § 253(2)(F) has been amended since the conduct that gave rise to the charges in this case occurred, but the amendment is not relevant to the issues presented in this appeal. *See* P.L. 2021, ch. 360, § 1 (effective Oct. 18, 2021) (codified at 17-A M.R.S. § 253(2)(F) (2022)).

sexual act with a student at an educational institution and "is a teacher, employee *or other official* having instructional . . . authority over the student," *id.* (emphasis added). We affirm the judgment.

## I. BACKGROUND

[¶2] The court made the following findings of fact, which are supported by competent evidence admitted during the trial. *See State v. Wilson*, 2015 ME 148, ¶¶ 2, 13, 127 A.3d 1234.

[¶3] Marquis, who was fifty-seven years old in March 2019, owned a driving school in Skowhegan and taught driver's education courses. Although he held some courses at his place of business, he also taught a course offered at a public high school in Skowhegan. He was not employed by the high school. Students paid the course fee directly to his business.

[¶4] The high school did provide Marquis's business with in-kind benefits—the use of a school classroom to teach the course and the use of a filing cabinet and other school equipment in the classroom. The school also allowed Marquis to advertise his course through a sign-up sheet near the school office. Although Marquis's course was not a part of the school's regular academic curriculum, students who successfully completed it (or another driver's education course) and received their learner's permits from the State

could earn credit toward the school's graduation requirement of six elective credits. The course consisted of classroom instruction at the school after school hours several times per week, as well as driving practice with Marquis. While attending Marquis's classes at the school, students were bound by the school's code of conduct, and if a student did something in violation of the code during a driver's education class, Marquis could report the violation to the school principal, who could discipline the student. Although the school normally allowed students to leave school premises on school days only if authorized by their parents or legal guardians, the school allowed students who were passing all their courses and enrolled in Marquis's course to leave school during study halls to practice driving under his supervision.

[¶5] For the students participating in Marquis's courses to receive their learner's permits, the students needed to (1) complete the requisite number of driving hours and have Marquis send a "completion card" to the State and (2) pass a written test administered on school premises and graded by Marquis. Marquis determined whether a student enrolled in his course earned a learner's permit, and the school awarded a student credit toward the graduation requirement based on whether the student had obtained the learner's permit. Responsibility for evaluating Marquis's performance as a

4

driving instructor rested with a state agency, not with the school, but Marquis's classroom sessions could be cancelled if the principal had any concern about Marquis's appearance or behavior.

[¶6]  In early 2019, the victim was eighteen years old and was enrolled as a student in the high school.  The victim's mother signed her up for Marquis's driver's education course.  At the first class of the course, the victim's mother told Marquis that the victim had ADHD and voiced concern about the victim's ability to concentrate.

[¶7]  The victim used her study hall periods to sign herself out of school in order to practice driving with Marquis.  Marquis also contacted the victim's mother occasionally to ask if he could take the victim out to practice driving in the evening, and the mother agreed to these requests.  The victim's mother trusted Marquis and considered him to be one of the victim's "teachers."  On two occasions in March 2019, Marquis picked up the victim at school in the vehicle that he used for teaching students to drive, purportedly so that the victim could practice driving.  Instead, Marquis drove her to a motel and engaged in a "sexual act" with her, as that term is statutorily defined. *See* 17-A M.R.S. § 251(1)(C) (2022).

[¶8] During the time that he spent with the victim, Marquis discussed paying for her to attend college; spoke to her about getting married; and bought her gifts, including a cell phone, a ring, and clothing. Marquis communicated with the victim by calling and texting the phone that he had purchased for her use. Marquis told her not to tell anyone about their relationship "because something bad [would] happen" if she did.

[¶9] After the principal learned about Marquis's conduct, he met with Marquis, and Marquis indicated that he did not believe that having a sexual relationship with an eighteen-year-old student was a problem. The principal responded by exercising his authority to cancel Marquis's class that evening and told Marquis to stay off school grounds.

[¶10] The State charged Marquis with two counts of gross sexual assault (Class C), 17-A M.R.S. § 253(2)(F). The statute defining the crime provided that "[a] person is guilty of gross sexual assault if that person engages in a sexual act with another person and . . . [t]he other person, not the actor's spouse, is a student enrolled in a private or public elementary, secondary or special education school, facility or institution and the actor is a teacher, employee or other official having instructional, supervisory or disciplinary authority over the student." *Id.* The case proceeded to a jury-waived trial, at which the only

6

contested issue was whether Marquis was an "other official" under section 253(2)(F).

[¶11]  After the trial, the court set forth specific findings and conclusions orally during a post-trial hearing and then in a written decision issued the same day.  The court interpreted the phrase "other official" in section 253(2)(F) "to encompass anyone who, by virtue of his or her role within the school, although not actually employed by the school, had the ability to exert pressure over students, such that [a student's] consent to sexual contact may not be free and voluntary."  It then found that Marquis had been "cloaked in authority" by the school and "imbued with authority over [the school's] students" and that, "[b]y virtue of his role within the school, [Marquis] had the ability to exert pressure on students such that their consent may not be free and voluntary."  The court found, beyond a reasonable doubt, that Marquis was therefore an "other official" of the high school pursuant to section 253(2)(F) and that he was guilty of both charges.[2]

[¶12]  Marquis filed a motion for a new trial and for "correction of factual findings" in which he argued that several of the court's findings were not

---

[2]  Marquis does not challenge the sufficiency of the evidence supporting the court's findings on the elements of the charges beyond the "other official" element, and those findings are supported by competent evidence in the record.  *See State v. Bittues*, 2019 ME 83, ¶ 7, 208 A.3d 800.

supported by evidence in the record. The court denied the motion in part and granted it in part: it declined to order a new trial or to reopen the evidence, but it amended certain factual findings. The court did not alter its findings that the State had proved each element of the charged crimes beyond a reasonable doubt. The court later entered a judgment on the verdicts and imposed concurrent sentences of thirty months of imprisonment with all but three months suspended and two years of probation. Marquis timely appealed. *See* 15 M.R.S. § 2115 (2022); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶13] Marquis argues that the court interpreted the phrase "other official" in section 253(2)(F) too broadly and that the trial record cannot support a finding that he met that statutory element. We therefore address both the meaning of the phrase "other official" in the statute, a question of statutory interpretation, and the sufficiency of the evidence supporting the court's finding that Marquis was, in fact, an "other official" of the high school according to the meaning of that phrase. *See Wilson*, 2015 ME 148, ¶¶ 12-19, 127 A.3d 1234; *State v. Conroy*, 2020 ME 22, ¶¶ 16-26, 225 A.3d 1011; *State v. Greenleaf*, 2004 ME 149, ¶¶ 12-26, 863 A.2d 877.

8

## A. The Unambiguous Meaning of "Other Official"

[¶14] We review a trial court's legal conclusions, including its interpretation of a statutory provision, de novo. *Conroy*, 2020 ME 22, ¶¶ 10, 19, 225 A.3d 1011; *see, e.g.*, *State v. Chittim*, 2001 ME 125, ¶ 5, 775 A.2d 381 ("The interpretation of a statute is a question of law."). In interpreting statutes, "[w]e look first to the plain language of the statute to determine its meaning if we can do so while avoiding absurd, illogical, or inconsistent results." *Conroy*, 2020 ME 22, ¶ 19, 225 A.3d 1011. "Unless the statute itself discloses a contrary intent, words in a statute must be given their plain, common and ordinary meaning, such as [the average person] would usually ascribe to them." *State v. Vainio*, 466 A.2d 471, 474 (Me. 1983). Only if a statute is ambiguous "will we look beyond the words of the statute to examine other potential indicia of the Legislature's intent, such as the legislative history." *Conroy*, 2020 ME 22, ¶ 19, 225 A.3d 1011. "A statute is ambiguous if it is reasonably susceptible to different interpretations." *State v. Legassie*, 2017 ME 202, ¶ 13, 171 A.3d 589 (quotation marks omitted). Our rules of statutory construction include the rule of *ejusdem generis*, which dictates that "[w]hen words of enumeration are immediately followed by words of general import[,] the general words, when their use is uncertain, should be governed by the specific." *State v. Ferris*,

284 A.2d 288, 290 (Me. 1971). The rules of lenity and of strict construction also guide our interpretation of criminal statutes. *Legassie*, 2017 ME 202, ¶ 13, 171 A.3d 589. "Pursuant to each of these rules, any ambiguity left unresolved by a strict construction of the statute must be resolved in the defendant's favor."[3] *Id.* (quotation marks omitted).

[¶15] Our first task is to decide whether the meaning of the term "other official" as used in section 253(2)(F) is ambiguous. *See Conroy*, 2020 ME 22, ¶ 19, 225 A.3d 1011. The term is not defined by statute, and we have never interpreted its meaning. The statute in effect at the time provided that "[a] person is guilty of gross sexual assault if that person engages in a sexual act with another person and . . . [t]he other person, not the actor's spouse, is a student enrolled in a private or public elementary, secondary or special education school, facility or institution and the actor is a teacher, employee or *other official* having instructional, supervisory or disciplinary authority over the student." 17-A M.R.S. § 253(2)(F) (emphasis added). We conclude that "other official" is unambiguous based on the plain language of the statute.

---

[3] The rule of lenity requires us to resolve any ambiguity in the defendant's favor "[i]f the Legislature's intent remain[s] indecipherable after using the tools of construction available to us." *State v. McLaughlin*, 2018 ME 97, ¶ 9, 189 A.3d 262.

[¶16] In determining the plain meaning of statutory language in the absence of a statutory definition, we frequently look to dictionary definitions. *See State v. Sloboda*, 2020 ME 103, ¶¶ 8-10, 237 A.3d 848; *State v. Hall*, 2019 ME 126, ¶ 18, 214 A.3d 19. Although "official" is a broad designation, its meaning is clear. One dictionary defines "official" as "[o]ne who holds an office or position, *especially one who acts in a subordinate capacity for an institution such as a corporation or governmental agency.*" *Official*, The American Heritage Dictionary of the English Language (5th ed. 2016) (emphasis added). Others define it similarly. *See Official,* New Oxford American Dictionary (3d ed. 2010) ("[A] person holding public office or having official duties, esp[ecially] as a representative . . . ."); *Official*, Webster's New World College Dictionary (5th ed. 2016) ("[A] person holding office, esp[ecially] public office."); *Official*, Black's Law Dictionary (11th ed. 2019) ("One authorized to act for a corporation or organization, esp[ecially] in a subordinate capacity."). A common use of the word "official" is for a referee or umpire, i.e., a person authorized by the sponsor of an athletic or sporting event to regulate the conduct of the event according to the rules of the sport. *See, e.g.*, *Official*, The American Heritage Dictionary of the English Language.

[¶17]  The theme common across these definitions is that an official is someone whom an organization has empowered to exercise authority.  It is in fact the organization's investiture of authority in an individual that enables the individual to act "officially."  That interpretation is completely in harmony with the obvious purpose of the statute—to protect students against sexual predation by teachers, employees, and others whom a school has enabled and empowered to exercise disciplinary, supervisory, or instructional authority over its students.  *See* 17-A M.R.S. § 253(2)(F); L.D. 1113, Statement of Fact (111th Legis. 1983) (explaining that the bill that led to the enactment of section 253(2)(F) "recognize[d] the subtle pressures that may be put upon a student to ingratiate himself or herself with a teacher, employee or other school official and that the student's 'consent' in such cases may not be free and voluntary").

[¶18]  That interpretation also meshes with the principle of *ejusdem generis*—that "the meaning of general words of a phrase is limited to things or items of the same general class as those expressly mentioned," *Badler v. Univ. of Me. Sys.*, 2022 ME 40, ¶ 7, 277 A.3d 379.  Under that rule, the meaning of "other official" in the statute at issue here is limited to positions in the same general class as a teacher or employee of a school.  *See id.*; 17-A M.R.S. § 253(2)(F).  "[O]ther official" must therefore mean a person on whom the

school has conferred the ability to exercise disciplinary, instructional, or supervisory authority over students that is akin to the authority exercised by a teacher or school employee.  *See* 17-A M.R.S. § 253(2)(F).  We now turn to the question whether the trial court's finding that Marquis was an "other official" of the high school was supported by the trial evidence.

## B.    The Sufficiency of the Evidence

[¶19]  We review for clear error a finding that the State has proved an element of a crime, viewing "the evidence admitted at trial in the light most favorable to the State to determine whether the fact-finder could rationally have reached its finding[] beyond a reasonable doubt."  *Wilson*, 2015 ME 148, ¶ 13, 127 A.3d 1234 (quotation marks omitted); *see* Alexander, *Maine Appellate Practice* § 416 at 258 (6th ed. 2022).  Factual findings are the result of clear error only when the record contains no competent evidence supporting them. *Greenleaf*, 2004 ME 149, ¶ 13, 863 A.2d 877; *see Conroy*, 2020 ME 22, ¶ 26, 225 A.3d 1011.

[¶20]  The trial court found that the school had "imbued [Marquis] with authority over" its students and that Marquis, by virtue of his role within the school community, had the "ability to exert pressure on students such that their consent may not be free and voluntary."  In making these findings, the court

focused on precisely what the statute required—the extent to which the school cloaked Marquis with authority over students, as it would with a teacher or other employee, resulting in a power imbalance that could be exploited.

[¶21] Marquis contends that more evidence of a formalized relationship with the school was required for the court to find that he was an "other official" under the statute. He points to evidence suggesting that there was no written contract between him and the school, that the school did not compensate him, that the school board had not officially appointed him to a titled position, and that the school did not conduct reviews of his job performance. Marquis focuses on what might be called behind-the-scenes details that likely would be unknown or irrelevant to students.

[¶22] The evidence that Marquis recites is consistent with the fact that Marquis was not a teacher or employee of the school, but it does not preclude the court from finding that he was an "other official." The court was presented with countervailing evidence demonstrating the following:

- The school granted Marquis permission to teach his driver's education course using a school classroom and school audiovisual resources.

14

- Marquis had been teaching the only driver's education course offered at the school for at least seven years, and the principal considered Marquis to be the school's driver's education instructor.[4]

- While Marquis was teaching students in the school's classroom, students were subject to the school's code of conduct and could be disciplined if Marquis reported a violation of the code to the principal.

- Marquis's conduct at the school was subject to review by the principal, who could (and later did) terminate Marquis's connection with the school.

- Students normally needed parental permission to leave school during school hours, but students taking Marquis's driver's education course could sign out to practice driving with him. The reason that the school granted Marquis authority to take students driving during school hours was because he was teaching driver's education to the students.

- Students could take driver's education as a pass-fail elective and earn credit toward their graduation requirements. Whether the school granted students credit depended on whether they earned a learner's permit in Marquis's course.

- Marquis was well aware of his authority to decide whether a student passed his course. For example, he had told the victim not to worry about passing his course because he had "the hots" for her, and he suggested to her that she might be able to pass the course without taking the exam "if [she] let him in [her] pants."

The evidence that the trial court relied upon, appropriately in light of the protective purpose of the statute, permitted the court to determine that students would reasonably view Marquis as someone vested, by the school,

---

[4] When asked whether Marquis had "any official capacity at the school," the principal answered, "Driver's ed instructor. . . . That's how we refer to him, driver's ed instructor."

with supervisory and instructional authority over them while they were sitting in his classroom after school and driving his vehicle during school. It is no coincidence that the victim's mother considered Marquis to be one of the victim's teachers. The evidence was sufficient to support the court's findings that Marquis was an "other official" of the school and that he was guilty of gross sexual assault. *See Greenleaf*, 2004 ME 149, ¶ 13, 863 A.2d 877; *State v. Cummings*, 2017 ME 143, ¶ 12, 166 A.3d 996 ("We defer to all credibility determinations and reasonable inferences drawn by the fact-finder, even if those inferences are contradicted by parts of the direct evidence." (quotation marks omitted)).

The entry is:

Judgment affirmed.

---

Philip G. Mohlar, Esq. (orally), Mohlar Law Office, Skowhegan, for appellant Duane Marquis

Maeghan Maloney, District Attorney, and Amanda Seekins, Asst. Dist. Atty. (orally), Prosecutorial District IV, Skowhegan, for appellee State of Maine

Somerset County Unified Criminal Docket docket number CR-2019-327
FOR CLERK REFERENCE ONLY